LOUISE LOWREY ET AL. *v.* VALLEY FORGE INSURANCE COMPANY
(14500)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued October 2—decision released December 8, 1992

*John H. Hanks,* for the appellants (plaintiffs).

*Jon S. Berk,* with whom was *Eileen McCarthy Geel,* for the appellee (defendant).

BORDEN, J. The sole issue in this appeal is the validity of a policy exclusion from underinsured motorists coverage[1] of a motor vehicle that is owned by, or furnished or available for the regular use of, the named insured. The plaintiffs, Louise Lowrey and Sebastiana Scionti, appeal[2] from the judgment of the trial court denying their application to vacate a compulsory arbitration award that denied them underinsured motorists coverage under a policy issued by the defendant, Valley Forge Insurance Company. The plaintiffs claim that: (1) the applicable regulation does not validate the policy exclusion that appears in the underinsured motorist policy issued by the defendant; and (2) the

---

[1] The defendant's policy also provided uninsured motorists coverage. Under our law the statutes and regulations applicable to uninsured motorist coverage also apply to underinsured motorist coverage. *McGlinchey* v. *Aetna Casualty & Surety Co.,* 224 Conn. 133, 134–35, 617 A.2d 445 (1992); *Hotkowski* v. *Aetna Life & Casualty Co.,* 224 Conn. 145, 151, 617 A.2d 451 (1992); *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 31 n.3, 594 A.2d 977 (1991). Because this case involves a claim for underinsured motorist coverage, we refer herein to that coverage.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

validity of the policy exclusion must be determined not by the regulation but by a statute, and the applicable statute does not authorize the exclusion. We affirm the judgment.

The facts are undisputed. In June, 1989, the plaintiffs were passengers in a car owned and operated by Alfreda Kozlowski, and suffered injuries as a result of a one car accident. Neither plaintiff was a resident of Kozlowski's household. The defendant had issued an automobile insurance policy to Kozlowski covering the car and another car owned by her. The policy provided single-limit liability coverage for each car in the amount of $100,000, and underinsured motorist coverage for each car in the amount of $100,000. The defendant paid each plaintiff $50,000, thereby exhausting the liability coverage under the policy. The defendant, however, refused to pay the plaintiffs' underinsured motorist claims.

The plaintiffs requested arbitration of their underinsured motorist coverage claims against the defendant. The arbitration panel, by a two to one vote, denied the claims. The trial court, in denying the plaintiffs' application to vacate the award, held that the exclusion in Kozlowski's policy was authorized by a state regulation and was therefore valid. This appeal followed.

The policy exclusion at issue in this case provides in pertinent part: "However, 'uninsured motor vehicle' does not include any vehicle or equipment: 1. Owned by or furnished or available for your regular use."[3] The

---

[3] The amendment to the policy provides in pertinent part: "Part C [Uninsured Motorists Coverage] is amended as follows . . . C. Exception 1. to the definition of 'uninsured motor vehicle' is replaced by the following: However, 'uninsured motor vehicle' does not include any vehicle or equipment: 1. Owned by or furnished or available for your regular use." Under the definitions contained in the policy, "you" and "your" refer to the named insured, the spouse of the named insured if residing in the same household, and any other person related to the named insured by blood, marriage or adoption, including a ward or foster child, who resides in the same household.

regulation at issue provides in pertinent part: "The insurer's obligations to pay may be made inapplicable . . . (2) if the uninsured motor vehicle is owned by (A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing." Regs., Conn. State Agencies § 38-175a-6 (c) (2) (A).[4]

[4] Section 38-175a-6 of the Regulations of Connecticut State Agencies provides: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS

"(a) COVERAGE. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent.

"(b) ARBITRATION. The insurance may provide but not require that the issues of liability as between the insured and the uninsured motorist, and the amount of damages, be arbitrated. The insurer may provide against being bound by any judgment against the uninsured motorist.

"(c) EXCLUSIONS. The insurer's obligations to pay may be made inapplicable:

"(1) To any claim which has been settled with the uninsured motorist without the consent of the insurer;

"(2) if the uninsured motor vehicle is owned by

"(A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing,

"(B) a self insurer under any motor vehicle law, or

"(C) any government or agency thereof;

"(3) to pay or reimburse for workers' compensation or disability benefits.

"(d) LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workers' compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured

The plain language of the policy exclusion makes it clear that the exclusion applied to the Kozlowski vehicle. The vehicle involved in the accident was owned by Kozlowski, who was the named insured under the policy issued by the defendant. Thus, the vehicle was not an "uninsured motor vehicle" under the policy.

A comparison of the exclusion with the regulation makes it equally clear that the exclusion was authorized by the regulation and is therefore valid. "When an insurer seeks to limit its liability for uninsured or underinsured motorist coverage based on [a] regulation issued pursuant to [General Statutes (Rev. to 1989)] § 38-175c [now § 38a-336], it may do so only to the extent that the regulation expressly authorizes. *Allstate Ins. Co.* v. *Ferrante,* [201 Conn. 478, 483, 518 A.2d 373 (1986)]; see also *Nicolletta* v. *Nationwide Ins. Co.,* 211 Conn. 640, 647–48, 560 A.2d 964 (1989). Similarly, where an insurer seeks to limit its liability based on the statute itself, rather than on the regulation, it should only be permitted to do so to the extent that the statute expressly authorizes. In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Internal quotation marks omitted.) *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 674, 591 A.2d 101 (1991). That congruence is present here.

The *regulation* expressly permits an exclusion from underinsured motorist coverage for a vehicle that is

may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment.

"(e) RECOVERY OVER. The insurer may require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim, provided that the insurer shall not acquire by assignment, prior to settlement or judgment, its insured's right of action to recover for bodily injury from any third party."

owned by the named insured or by any resident relative of the named insured, or that is furnished for the regular use of the named insured or any such relative. The *policy exclusion* tracks the regulation by excluding such coverage for any vehicle that is owned by the named insured or by any resident relative of the named insured, or that is furnished or available for the regular use of the named insured or any such relative. We can perceive no incongruence between the regulation and the policy exclusion that would suggest that the policy exclusion was not authorized by the regulation. Compare *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 674–75.

Both the policy exclusion and the regulation on which it is based are fully consistent with the underlying rationale of underinsured motorist coverage, and with the difference between that coverage and liability coverage. In this connection, we agree with the reasoning of the Minnesota Supreme Court in two cases in which passengers in one car accidents unsuccessfully sought to recover underinsured motorists benefits from the carrier providing both liability and uninsured motorists coverage for the car involved in the accident.

"Liability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle from the negligent driving of the owner or another driving the vehicle. Underinsured coverage, however, is intended to protect against a different type of risk, the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance; that is, it is intended 'to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.' *Myers* v. *State Farm Mutual Automobile Ins. Co.,* 336 N.W.2d 288, 291 (Minn. 1983). An insured wishing to provide greater protection from his own negligence for himself and his passengers should

purchase additional liability insurance coverage; allowing underinsured coverage in the instant case would, in essence, be allowing an individual to increase liability coverage by purchasing less expensive underinsured coverage." *Meyer* v. *Illinois Farmers Ins. Group,* 371 N.W.2d 535, 537 (Minn. 1985).[5]

"Underinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. Here, however, the [plaintiffs] have already collected under the liability coverage of the insurer of the [Kozlowski] car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an 'underinsured motor vehicle' to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage." *Myers* v. *State Farm Mutual Automobile Ins. Co.,* supra.

Even if the regulation contained in § 38-175a-6 would validate the policy exclusion, the plaintiffs contend that the regulation does not govern this case because the policy exclusion in the insurance contract does not conform to the terms of the exclusion authorized by General Statutes § 38a-336 (a) (1) (A), formerly § 38-175c. The statute provides in pertinent part: "No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a

---

[5] Indeed, the defendant's policy in this case discloses a premium of $156 to $174 per car for $100,000 of liability coverage, and a premium of $29 to $33 for $100,000 of uninsured coverage.

motorcycle that is owned by the named insured . . . ."[6]
Contending that this language provides the sole basis
for the defendant's policy exclusion, the plaintiffs argue
that the policy exclusion is invalid because neither of
the plaintiffs was a named insured or a relative resid-
ing in the named insured's household. We disagree.

The statute has its origins in *Harvey* v. *Travelers
Indemnity Co.,* 188 Conn. 245, 449 A.2d 157 (1982), in
which we held invalid a policy provision that would have
excluded uninsured motorist coverage to the plaintiff
because he had been driving an uninsured vehicle that
was owned by his father. In *Harvey,* we acknowledged
that our interpretation of the governing regulatory
principles as requiring uninsured motorist coverage in
such circumstances could be criticized because "such

[6] General Statutes § 38a-336, formerly § 38-175c, provides: "UNINSURED
MOTORIST COVERAGE. (a) (1) Each automobile liability insurance policy shall
provide insurance, herein called uninsured motorist coverage, in accord-
ance with the regulations adopted pursuant to section 38a-334, with limits
for bodily injury or death not less than those specified in subsection (a) of
section 14-112, for the protection of persons insured thereunder who are
legally entitled to recover damages from owners or operators of uninsured
motor vehicles and underinsured motor vehicles and insured motor vehi-
cles, the insurer of which becomes insolvent prior to payment of such dam-
ages, because of bodily injury, including death resulting therefrom. Each
insurer licensed to write automobile liability insurance in this state shall
provide uninsured motorists coverage with limits requested by the named
insured upon payment of the appropriate premium, but the insurer shall
not be required to provide such coverage with limits in excess of the limits
of the bodily injury coverage of the policy issued to the named insured. No
insurer shall be required to provide uninsured motorist coverage to (A) a
named insured or relatives residing in his household when occupying, or
struck as a pedestrian by, an uninsured or underinsured motor vehicle or
a motorcycle that is owned by the named insured, or (B) to any insured
occupying an uninsured or underinsured motor vehicle or motorcycle that
is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each
automobile liability insurance policy issued or renewed on and after July 1,
1984, shall provide uninsured motorist coverage with limits for bodily injury
and death equal to those purchased to protect against loss resulting from
the liability imposed by law unless the insured requests in writing a lesser
amount, but not less than the limits specified in subsection (a) of section

a public policy discourages persons from obtaining liability insurance coverage and increases the risk of injury by uninsured motorists." Id., 252–53. We responded: "But that plea should be directed to the legislature." Id., 253.

The legislature, in turn, responded to such a plea in the next legislative session by enacting Public Acts 1983, No. 83-461, codified as § 38-175c (a) (1) (A) and (B), now § 38a-336 (a) (1) (A) and (B). We have recently recognized that this legislation was enacted "to limit to some extent the broad sweep of *Harvey* v. *Travelers Indemnity Co.*, [supra, 248]." *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 400 n.7, 579 A.2d 525 (1990); see also 26 S. Proc., Pt. 9, 1983 Sess., p. 3055, remarks of Senator Wayne Baker; Conn. Joint Standing Com-

14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(c) Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(d) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

mittee Hearings, Insurance and Real Estate, 1983 Sess., February 28, 1983, p. 59, testimony of Michael P. Meotti. It is clear, therefore, that § 38a-336 (a) (1) (A) and (B) was not intended to address the circumstances of a case such as this where, unlike *Harvey,* the plaintiffs were not occupying an uninsured vehicle.[7]

We know of no rule that the validation of one type of policy exclusion by a statute automatically disallows the validation of a different type of policy exclusion by a regulation. This case is governed not by General Statutes § 38a-336 but by § 38-175a-6 (c) (2) (A) of the regulations. See footnote 4. That regulation was promulgated, not under the statutory authority of § 38a-336, formerly § 38-175c, but under the general regulatory authority of the insurance commissioner pursuant to General Statutes § 38a-334 (a), formerly § 38-175a. Section 38a-334 (a) provides in pertinent part that the "insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies . . . . Such regulations shall relate to the insuring agreements, *exclusions,* conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages under such policies . . . ."[8] (Emphasis added.)

---

[7] The plaintiffs' reliance on *Nationwide Mutual Ins. Co.* v. *Pasion,* 219 Conn. 764, 594 A.2d 468 (1991), is misplaced. The principal issue in that case was "whether a written request to reduce uninsured motorist coverage by one of two named insureds on an automobile liability insurance policy is sufficient to satisfy the writing required by General Statutes (Rev. to 1989) § 38-175c (a) (2) [now § 38a-336]." Id., 765. Although *Pasion,* on its facts, involved a claim by a passenger in a one car accident for underinsured motorists coverage against the liability insurer of that car, there was no indication in that case that the policy contained an exclusion similar to the exclusion in this case or that the insurer raised such an exclusion in response to the plaintiffs' claim.

[8] General Statutes § 38a-334, formerly § 38-175a, provides: "MINIMUM PROVISIONS IN AUTOMOBILE LIABILITY POLICIES. (a) The insurance commissioner shall adopt regulations with respect to minimum provisions to

Furthermore, § 38-175a-6 (c) (2) of the regulations, having been originally promulgated in 1975, long antedates the enactment in 1983 of § 38a-336 (a) (1) (A) and (B) and, indeed, was repromulgated after legislative review in 1986. The plaintiffs' argument would in effect have us read the 1983 legislation as having impliedly repealed the preexisting regulation, despite our "rule disfavoring . . . the implied repeal of a regulation by a statute, especially where, as in the present case, the regulation at issue has been approved by the legislative regulation review committee." *Dugas* v. *Lumbermans Mutual Casualty Co.,* 217 Conn. 631, 641, 587 A.2d 415 (1991). We decline to invalidate the regulation that specifically authorizes the policy exclusion at issue in this case.

The judgment is affirmed.

In this opinion the other justices concurred.

be included in automobile liability insurance policies issued after the effective date of such regulations and covering private passenger motor vehicles, as defined in subsection (g) of section 38a-363, motor vehicles with a commercial registration, as defined in section 14-1, motorcycles, as defined in section 14-1, motor vehicles used to transport passengers for hire, motor vehicles in livery service, as defined in section 13b-101, and vanpool vehicles, as defined in section 14-1, registered or principally garaged in this state. Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages under such policies, shall make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages and shall include a provision that the insurer shall, upon request of the named insured, issue or arrange for the issuance of a bond which shall not exceed the aggregate limit of bodily injury coverage for the purpose of obtaining release of an attachment.

"(b) The commissioner, before adopting such regulations or any subsequent modifications or amendments thereof, shall consult with insurers licensed to write automobile liability insurance in this state and other interested parties. Nothing contained in such regulations or in sections 38a-334 to 38a-336, inclusive, 38a-338 and 38a-340 shall prohibit any insurer from affording broader coverage under a policy of automobile liability insurance than that required by such regulations."