SULLIVAN, J.
 

 On August 31, 1995, the defendant, Pennsylvania General Accident Insurance Company (General Accident), filed a motion to confirm the award of an arbitration panel. On September 8,1995, the plaintiff, Daniel Keyes, Jr., filed a motion to vacate the award. That motion was supported by a memorandum filed on September 11, 1995. On September 21, 1995, General Accident filed a memorandum in support of its motion to confirm and in opposition to the plaintiffs motion to vacate. A hearing on the motions was held before this court on September 29, 1995.
 

 The relevant facts in the present case, as presented in the parties’ briefs, are uncontested. On August 23, 1989, the plaintiff was a passenger in an automobile owned by Carol Mason and operated by Frank DeFelice.
 
 [1]
 
 As a result of DeFelice’s negligent operation of the
 
 *502
 
 vehicle, the vehicle veered off the roadway and hit a stone wall. The plaintiff suffered a severe spinal cord injury that has rendered him a quadriplegic.
 

 At the time of the accident, the vehicle was insured by General Accident. The policy provided liability coverage of $300,000 and uninsured/underinsured motorist coverage in the amount of $300,000 per vehicle insured under the policy. The policy insured three vehicles, including the vehicle involved in the accident. The plaintiff and DeFelice were neither residents of the Mason household nor were they relatives of the Masons.
 

 The plaintiff commenced litigation against DeFelice in negligence
 
 [2]
 
 and against Mason in her capacity as owner of the vehicle. General Accident stipulated to a judgment for the amount of liability coverage on the Mason vehicle, $300,000 minus collateral sources.
 

 Thereafter, the plaintiff sought coverage under the underinsured motorist provisions of the Mason policy. Pursuant to the terms of the insurance policy, the plaintiff filed a motion to compel arbitration of his claim. The plaintiff claimed that the policy provided $900,000 of stacked underinsured motorist coverage.
 

 The majority of the arbitrators concluded that the plaintiff was not entitled to underinsured motorist coverage on the basis of the Supreme Court’s decision in
 
 Lowrey
 
 v.
 
 Valley Forge Ins. Co.,
 
 224 Conn. 152, 617 A.2d 454 (1992).
 

 In compulsory arbitration cases, the reviewing court must conduct a de novo review of the arbitrators’ interpretation and application of the law.
 
 Ceci
 
 v.
 
 National Indemnity Co.,
 
 225 Conn. 165, 168 n.3, 622 A.2d 545 (1993). A policy providing that a decision agreed to by two of the arbitrators will be binding supports a conclusion that the parties participated in compulsory
 
 *503
 
 arbitration pursuant to General Statutes § 38a-336 (c).
 
 [3]
 
 See
 
 Hartford Accident & Indemnity Co.
 
 v.
 
 Sena,
 
 42 Conn. Sup. 336, 337, 619 A.2d 489 (1992)
 
 (Flynn, J.f
 
 The arbitration clause in the subject policy contains such a provision. It states that “[a] decision agreed to by two of the arbitrators will be binding as to: 1. Whether the ‘insured’ is legally entitled to recover damages . . . .’’Accordingly, in this memorandum, the court will review the arbitrators’ interpretation and application of the law.
 

 “[Cjonstruction of a contract of insurance presents a question of law for the court . . . .”
 
 Aetna Life & Casualty Co.
 
 v.
 
 Bulaong,
 
 218 Conn. 51, 58, 588 A.2d 138 (1991).
 

 A review of the policy provisions at issue is helpful in addressing the parties’ arguments. The relevant policy provisions are as follows.
 
 [4]
 
 Part C, the uninsured motorist coverage section of the policy, states that “[w]e will pay damages which an ‘insured’ is legally entitled to recover from the owner or operator of an ‘uninsured motor vehicle’ because of ‘bodily injury’; 1. Sustained by an ‘insured’; and 2. Caused by an accident.”
 

 An “insured” is defined as “1. You or any ‘family member.’ 2. Any other person ‘occupying’ ‘your covered
 
 *504
 
 auto.’ 3. Any person for damages that person is entitled to recover because of ‘bodily injury’ to which this coverage applies sustained by a person described in 1. or 2. above.”
 

 Under the endorsement amending the policy, “uninsured motor vehicle” is defined, in relevant part, as a vehicle “[f]or which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability for Uninsured Motorists Coverage applicable to each vehicle insured for this coverage under this policy.” This policy contains an exception to the definition of “uninsured motor vehicle.” It states that “ ‘uninsured motor vehicle’ does not include any vehicle or equipment: 1. Owned by or furnished or available for your regular use.” Under the definitions section of the policy, “you” and “your” refer to the “named insured” shown in the declarations and the spouse, if a resident of the same household.
 

 The limit of liability section of part C, as amended by endorsement PP 015412 86, states that “[t]he maximum limit of our liability for Uninsured Motorists Coverage in any one accident is the sum of the Uninsured Motorists Coverage limits shown in the Declarations applicable to each vehicle. This is the most we will pay regardless of the number of . . . [v]echicles involved in the accident. . . . The limit of liability shall be reduced by all sums: 1. Paid because of the ‘bodily injury’ by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A. . . . Any payment under this coverage will reduce any amount that person is entitled to recover under Part A.”
 

 The plaintiff moves to vacate the award on the ground that at the time the policy was written, General Accident expected that a claimant in the position of himself
 
 *505
 
 would be entitled to $900,000 of underinsured motorist coverage, less a credit for any sums paid under part A, the liability section of the policy. The plaintiff contends that the language of the policy supports his argument.
 

 First, the plaintiff argues that the policy does not contain an exclusion for underinsured motorist coverage for this vehicle. Second, the plaintiff argues that part C provides underinsured motorist coverage to an insured, and that, he, as a person occupying the vehicle, falls within the definition of an insured. Third, the plaintiff argues that the definition of underinsured motor vehicle does not exclude vehicles insured under the policy, but appears to include them within the definition.
 
 [5]
 
 Fourth, the plaintiff argues that the exception to the definition of uninsured motor vehicle does not apply to him because he is not a “you” or a “your,” as defined in the policy. Fifth, the plaintiff points out that part C states that the limit of liability provided is the most General Accident will pay, regardless of the number of vehicles involved in the accident. In addition, the plaintiff notes that part C provides that the limit of liability is to be reduced by all sums paid under part A, implying that coverage is available under both part A and part C of the policy. The plaintiff contends that the clause giving the carrier a credit under part C would never be operable unless it is applied in the circumstances of the present case.
 

 The plaintiff claims that these terms and conditions of the policy would lead a reasonably prudent person to believe that, under the factual scenario of the present case, $900,000 of underinsured motorist coverage is available to a claimant, less any amount received under
 
 *506
 
 part A. The plaintiff submits that this position is in accordance with the plain language of the policy. He contends that, on the basis of
 
 Lowrey,
 
 a denial of coverage in the present case would constitute a reformation of the contract, and would violate sound principles of law and equity.
 

 General Accident maintains that the decision of the arbitrators denying coverage was correct and should be confirmed. With respect to the plaintiffs argument that General Accident knew at the time the policy was written and issued that underinsured motorist coverage would be available under the facts of the present case, General Accident argues that such parol evidence is inadmissible and, in any event, no such evidence was offered by the plaintiff. General Accident maintains that the provisions of part C, which require an offset for sums paid under part A, do not require the application of underinsured motorist benefits in a one vehicle accident.
 

 The arbitrators found that
 
 Lowrey
 
 v.
 
 Valley Forge Ins. Co.,
 
 supra, 224 Conn. 152, controls the outcome of the present case. In
 
 Lowrey,
 
 the plaintiffs appealed from a judgment of the trial court denying their application to vacate a compulsory arbitration award that denied them underinsured motorist coverage. Id., 153. The plaintiffs were passengers in a car owned and operated by Alfreda Kozlowski. Id., 154. The plaintiffs suffered injuries as a result of a one car accident. Id. The plaintiffs recovered under the liability section of the policy and then sought payment under the underinsured motorist provisions. Id. The defendant, however, refused to pay the claim. Id.
 

 On appeal, the court addressed the “validity of a policy exclusion from underinsured motorists coverage of a motor vehicle that is owned by, or furnished or available for the regular use of, the named insured.”
 
 *507
 
 Id., 153. The court held that “[t]he plain language of the policy exclusion makes it clear that the exclusion applied to the Kozlowski vehicle. The vehicle involved in the accident was owned by Kozlowski, who was the named insured under the policy issued by the defendant. Thus, the vehicle was not an ‘uninsured motor vehicle’ under the policy.” Id., 156.
 

 The policy exclusion in
 
 Lowrey
 
 is identical to the policy exclusion in this action. The exclusion, as interpreted in
 
 Lowrey,
 
 denies coverage “for any vehicle that is owned by the named insured . . . or that is furnished or available for the regular use of the named insured or any such relative.” Id., 157. In the present action, the vehicle involved in the accident was owned by Carol Mason, the named insured.
 
 [6]
 
 Thus, according to the language of the exclusion, the Mason vehicle cannot be an underinsured motor vehicle. The contract of insurance in the present case states clearly that General Accident will only pay damages that an insured would be entitled to recover from the owner or operator of an underinsured motor vehicle. See also
 
 Quinn
 
 v.
 
 Allstate Ins. Co.,
 
 37 Conn. App. 188, 655 A.2d 787 (1995);
 
 [7]
 
 
 *508
 

 Gallagher
 
 v.
 
 Covenant Ins. Co.,
 
 Superior Court, judicial district of Ansonia-Milford, Docket No. CV93044908S (August 18, 1994)
 
 (Skolnick,
 
 J.);
 
 Samele
 
 v.
 
 Masucci,
 
 Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV890700438S (August 21, 1992) (7 C.S.C.R. 1054)
 
 (Spada,
 
 J.).
 

 The plaintiff argues that the exclusion does not apply to him because the vehicle was neither owned by him nor furnished to him nor made available for his regular use. This argument is unavailing, however, since the exclusion applies to the vehicle, not to the class of claimant. See
 
 Lowrey
 
 v.
 
 Valley Forge Ins. Co.,
 
 supra, 224 Conn. 158-59;
 
 Quinn
 
 v.
 
 Allstate Ins. Co.,
 
 supra, 37 Conn. App. 193.
 

 The foregoing notwithstanding, the plaintiff argues that unless underinsured motorist coverage is available under the facts of the present case, the terms of the policy are inconsistent.
 
 [8]
 
 In support of this argument, he relies on the policy provision that any payment under part C is offset by sums paid under part A. He contends that this clause would never be operable unless it applied in the circumstances of the present case.
 

 
 *509
 
 Here, the policy provisions are consistent in a situation where a passenger in a car is injured in a two car accident. The passenger may be entitled to bodily injury liability coverage under part A of the owner’s policy and may be able to collect underinsured motorist coverage under part C of the owner’s policy.
 
 [9]
 
 “The mies of construction dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses. . . . Where two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions.” (Citations omitted; internal quotation marks omitted.)
 
 Dainty Rubbish Service, Inc.
 
 v.
 
 Beacon Hill Assn., Inc.,
 
 32 Conn. App. 530, 534, 630 A.2d 115 (1993).
 

 
 *510
 
 Despite the tragic events of the present case, the court is constrained by the law as clearly annunciated in
 
 Lowrey.
 

 [10]
 

 In upholding the validity of the exclusion which denied coverage to passengers of an insured vehicle the court noted that: “Liability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle from the negligent driving of the owner or another driving the vehicle. Underinsured coverage, however, is intended to protect against a different type of risk, the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance; that is, it is intended to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. . . . An insured wishing to provide greater protection from his own negligence for himself and his passengers should purchase additional liability insurance coverage . . . .” (Citations omitted; internal quotation marks omitted.)
 
 Lowrey
 
 v.
 
 Valley Forge Ins. Co.,
 
 supra, 224 Conn. 157-58.
 

 The
 
 Lowrey
 
 court also stated that “[ujnderinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. Here, however, the [plaintiff has] . . . already collected under the liability coverage of the insurer of the . . . car. To now collect further under the same insurer’s underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining
 
 *511
 
 an underinsured motor vehicle to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.” (Internal quotation marks omitted.) Id., 158.
 

 Furthermore, it is well settled that underinsured motorist coverage applies when the insured vehicle is compared against a tortfeasor’s vehicle. In
 
 American Universal Ins. Co.
 
 v.
 
 DelGreco,
 
 205 Conn. 178, 530 A.2d 171 (1987), the court stated that the bodily injury liability bonds and policies referred to in General Statutes § 38-175 (b) (2), now General Statutes § 38a-336 (e),
 
 [11]
 
 are those which cover the tortfeasor’s motor vehicle. Id., 194. “That subsection mandates that, in determining whether a motor vehicle is ‘underinsured’ for purposes of [§ 38a-336 (e)], the aggregate of the limits of all such bonds and policies
 
 on the tortfeasor’s motor vehicle
 
 is compared against the amount of uninsured motorist coverage of the insured.” (Emphasis in original.) Id.
 

 This court has no choice but to find that the arbitrators correctly determined that the plaintiff is not entitled to underinsured motorist coverage. The defendant’s motion to confirm the award of the arbitrators, therefore, is granted and the plaintiffs motion to vacate the award of the arbitrators is denied.
 

 [1]
 

 Carol Mason’s daughter, Deborah Mason, was also a passenger in the vehicle at the time of the accident.
 

 [2]
 

 The arbitrators found that DeFelice had no insurance.
 

 [3]
 

 General Statutes § 38a-336 (c) provides in part that “[e]ach automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. . . .” This provision makes arbitration of insurance coverage issues compulsory.
 
 Bodner
 
 v.
 
 United Services Automobile Assn.,
 
 222 Conn. 480, 488, 610 A.2d 1212 (1992).
 

 [4]
 

 The plaintiffs brief identifies the policy as endorsement PP 00 01 04 86, as amended by endorsement PP 01 54 12 86. The identifying numbers on the policy appended to the plaintiff’s brief, however, are PP 05 72 12 89. The policy appended to the defendant’s brief corresponds to the identifying numbers specified by the plaintiff. While the terms of the two policies may be identical, this memorandum will reference the policy appended to the defendant’s brief, since this is the policy which both parties have identified as the one a.t issue.
 

 [5]
 

 An underinsured motor vehicle is defined by a comparison of the sum of the limits of liability under bodily iryury liability policies applicable at the time of the accident with the sum of the limits of liability for uninsured motorist coverage applicable to each vehicle insured for this coverage under the policy.
 

 [6]
 

 Paul J. Mason is named on the declarations page of the policy.
 

 [7]
 

 The plaintiff argues that
 
 Quinn
 
 can be distinguished because the policy in that case contained a clear exclusion of coverage for resident relatives of the named insured, and the Mason policy exclusion was not clear. Quinn’s status as a resident relative of the insured’s household was irrelevant to the court’s decision in
 
 Quinn. Quinn
 
 v.
 
 Allstate Ins. Co.,
 
 supra, 37 Conn. App. 193. The court stated that the exclusion applied by reason of the fact that the injuries were sustained in a vehicle owned by the named insured. Id.
 

 In
 
 Quinn,
 
 the plaintiff was a passenger in a vehicle owned and operated by Smith. Id., 189. An accident occurred in which the plaintiff was injured. Id. At the time of Ihe accident, Smith had a policy of insurance on the vehicle issued by 1he defendant. Id. Quinn asserted that Smith’s negligence caused her injuries. Id. After being paid under the liability section of the policy, the plaintiff claimed underinsured motorist coverage under the policy, since the bodily injury coverage was insufficient to compensate her for her injuries. Id. The trial court granted the defendant’s motion for summary judgment on the basis of the holding in
 
 Lowrey.
 
 Id. The
 
 Quinn
 
 court, held that “because the vehicle in which the plaintiff was injured was owned by
 
 *508
 
 Smith, the named insured, the policy clearly excludes underinsured motorist coverage. Id., 193. The provisions in the defendant’s policy are similar to those in the present action. Both policies excluded from the definition of underinsured motor vehicle one which is owned by the named insured.
 

 [8]
 

 The plaintiff posits that the terms of the policy are ambiguous and susceptible to more than one interpretation. “It is generally accepted . . . that when two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it . . . . ”
 
 Sturman
 
 v.
 
 Socha,
 
 191 Conn. 1, 9, 463 A.2d 527 (1983). “Before this rule of construction may be applied, there must be a determination that the terms of the contract are actually ambiguous.”
 
 Dainty Rubbish Service, Inc.
 
 v.
 
 Beacon Hill Assn., Inc.,
 
 32 Conn. App. 530, 533, 630 A.2d 115 (1993), citing
 
 Kelly
 
 v.
 
 Figueiredo,
 
 223 Conn. 31, 37, 610 A.2d 1296 (1992). The relevant inquiry is not “the interpretation of ambiguous language, but rather, the construction of a contract containing [allegedly] inconsistent or conflicting clauses.”
 
 Dainty Rubbish Service, Inc.
 
 v.
 
 Beacon Hill Assn., Inc.,
 
 supra, 533-34.
 

 [9]
 

 For example, assume a vehicle owned and operated by Y is hit by a vehicle owned and operated by X. Q, a passenger in Y’s vehicle, is injured. Q sues X and Y. Payment is made to Q under the bodily injury liability section of X’s insurance contract; payment is made to Q under the bodily injury liability section of Y’s insurance contract. The payments are insufficient to compensate Q for his injuries. Q, as a person occupying Y’s vehicle, is an insured under Y’s policy. Thus, Q seeks underinsured motorist coverage under Y’s policy.
 

 The underinsured motorist provisions of Y’s policy state that the insurer will pay damages that an insured, Q, is legally entitled to recover from the owner of an uninsured motor vehicle. Assume further that Y’s policy states that an uninsured motor vehicle is one for which the sum of the limits of liability under all bodily injury policies applicable at the time of the accident (X’s and Y’s policies) is less than the sum of the limits of liability for underinsured motorist coverage applicable to each vehicle insured for this coverage under Y’s policy. Assume that the sum of the limits of liability of X’s and Y's bodily injury policies is less than the underinsured motorist coverage available under Y’s policy. Q would be entitled to underinsured motorist coverage under Y’s policy, but it would be offset by the amount paid to Q under the bodily injury section of Y’s policy. Under these facts, the terms of the policy do not present an inconsistency.
 

 A policy exclusion for vehicles owned by, furnished or made available for the regular use of the named insured would not apply in this scenario because the underinsured motor vehicle is X’s vehicle. See
 
 American Universal Ins. Co.
 
 v.
 
 DelGreco,
 
 205 Conn. 178, 194, 530 A.2d 171 (1987) (stating that term underinsured motorist coverage applies to situations where tortfeasor’s vehicle is underinsured).
 

 [10]
 

 In the opinion of the dissenting arbitrator, the exclusionary language in the present case is ambiguous when read in conjunction with the policy language regarding the limits of liability for underinsured motorist coverage. The arbitrator concluded that
 
 Lowrey
 
 is not controlling because that case did not address this issue. It is submitted that the policy language is neither ambiguous nor inconsistent in the case of a two car accident, and that the decision in
 
 Lowrey
 
 is controlling.
 

 [11]
 

 General Statutes § 38a-336 (e) provides: “For the purposes of this section, an ‘underinsured motor vehicle’ means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section.”