# FLEET NATIONAL BANK, EXECUTOR (ESTATE OF WILHELMINA GREGER) *v.* AETNA INSURANCE COMPANY*

Superior Court  Judicial District of  File No. CV970569097S
Hartford-New Britain at Hartford

Memorandum filed October 10, 1997

* Affirmed. *Fleet National Bank* v. *Aetna Ins. Co.*, 245 Conn. 546, 715 A.2d 740 (1998).

*Clayman, Markowitz, Pinney & Baram*, for the plaintiff.

*Cooney, Scully & Dowling*, for the defendant.

I

FACTUAL AND PROCEDURAL HISTORY

TELLER, J. The present case raises an issue of first impression in Connecticut. The plaintiff, Fleet National Bank, executor of the estate of Wilhelmina Greger (Greger), instituted this action against the defendant, Aetna Insurance Company, seeking money damages pursuant to the underinsured motorist conversion coverage provisions of a policy issued by the defendant. The defendant filed an answer denying the material allegations of the complaint. The defendant has moved for summary judgment arguing that, as a matter of law, the plaintiff is not entitled to receive underinsured motorist benefits from the defendant because the vehicle Greger was occupying was not an underinsured motor vehicle as defined by the policy.

The plaintiff has also moved for summary judgment as to liability, claiming that the standard policy exclusions for uninsured motorist coverage do not apply to underinsured motorist conversion coverage.

The facts of the present case are not in dispute. On June 2, 1996, the plaintiff's decedent, Greger, was a passenger in an automobile which she owned, and which was being operated by her husband, Otto Greger (Otto). Greger suffered personal injuries and ultimately died as a result of injuries she sustained in a collision with a vehicle which was being driven by a third party. At the time of the accident, the policy issued to the

Gregers by the defendant provided liability coverage with a limit of $300,000 per accident and underinsured motorist conversion coverage with a limit of $300,000 per accident for each of two vehicles. Greger and Otto were named insureds on the aforementioned policy and the defendant charged a higher premium for the conversion coverage than for standard underinsured motorist coverage. Because the accident was caused by Otto's negligence, the plaintiff sought and received money damages pursuant to the liability coverage provided by the defendant.[1] After the liability limits of the aforementioned policy were exhausted, the plaintiff sought additional benefits under the underinsured motorist conversion provision of the same policy.

## II

## STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Citations omitted.) *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989). "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter

[1] Pursuant to the liability coverage provided by the policy, the defendant paid Greger's estate $297,282.84. In addition, the defendant paid $2717.16 in property damages to the owner of the other vehicle involved in the accident.

of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105–106, 639 A.2d 507 (1994). A question of law is an appropriate matter for summary judgment. *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 660, 691 A.2d 1107 (1997).

### III

### DISCUSSION

In the present case, the plaintiff specifically argues that because General Statutes § 38a-336a provides that "[t]he purchase of such underinsured motorist conversion coverage shall be in lieu of underinsured motorist coverage pursuant to section 38a-336," none of the exclusions in the uninsured motorist coverage should be applicable to this claim. See *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 617 A.2d 454 (1992). The plaintiff further argues that the policy inappropriately excludes the plaintiff's vehicle from the definition of an underinsured vehicle, and, therefore, should not bar recovery of underinsured motorist benefits. According to the plaintiff, the policy's exclusion of any vehicle "[o]wned by or furnished or available for the regular use of you or any family member," is applicable only to "standard" uninsured or underinsured motorist coverage available under General Statutes § 38a-336 and not to underinsured motorist conversion coverage available under § 38a-336a. To support its second argument, the plaintiff relies on the "in lieu of" language in § 38a-336a, and notes that the conversion statute does not

contain the exclusionary language of § 38a-336 which gives an insurer the right to exclude any insured occupying an uninsured or underinsured motor vehicle that is owned by such insured.

The policy's underinsured motorist conversion coverage, as amended by two endorsements, provides in pertinent part: " 'Covered person' as used in this part means: 1. You or any family member. 2. Any other person occupying your covered auto. 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above. . . . 'Uninsured motor vehicle' means a land motor vehicle . . . 1. To which no bodily injury liability bond or policy applies at the time of the accident. . . . 3. To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company: a. denies coverage . . . ."

"Item 4. under the definition of 'uninsured motor vehicle' is deleted and replaced by the following: 4. Which is an 'underinsured motor vehicle'. An 'underinsured motor vehicle' is a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the fair, just and reasonable damages of the covered person. 2. Under the LIMIT OF LIABILITY section, Paragraph D.[2] is deleted . . . . However, *uninsured motor vehicle* does not include any vehicle: 1. Owned by or furnished or available for the regular use of you or any *family member* . . . ." (Emphasis in original.)

Underinsured motorist conversion coverage differs from standard underinsured motorist coverage in two

---

[2] Paragraph D reduced the amounts payable under the uninsured or underinsured motorist coverage by payments from the tortfeasor, and workers' compensation or disability payments available to an insured claimant.

important aspects. First, it modifies the definition of an underinsured motor vehicle to a "motor vehicle with respect to which the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the fair, just and reasonable damages of the covered person." General Statutes § 38a-336a (e). In so doing, conversion coverage "provides enhanced protection to victims of underinsured motorists because, in contrast to coverage under § 38a-336 [under which the tortfeasor's policy is compared to the standard underinsured motorist coverage], it is activated when 'the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the *fair, just and reasonable damages of the covered person.*' " (Emphasis in original.) *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 307, 673 A.2d 474 (1996);[3] see also *Lash* v. *Aetna Casualty & Surety Co.*, 236 Conn. 318, 673 A.2d 84 (1996). Second, "purchase of this optional coverage nullifies the reduction of a tortfeasor's payment from the limit of uninsured motorist coverage . . . ." J. Berk & M. Jainchill, Connecticut Law of Uninsured and

---

[3] The *Florestal* court noted that "conversion coverage" was enacted in response to the holding in *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 633, 569 A.2d 1105 (1990), which addressed the availability of uninsured motorist benefits when multiple claims are brought against one tortfeasor's liability policy, and provided that " '[t]he fact that [the tortfeasor's] liability coverage has . . . been exhausted because of multiple claims does not change the effect of the statute in activating uninsured motorist coverage only when the liability insurance of the tortfeasor is less in amount [than the uninsured motorist coverage of the present claimant].' " *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 306, quoting *American Motorists Ins. Co.* v. *Gould*, supra, 633. In *Gould*, the tortfeasor's liability coverage of $140,000 was allocated among four passengers, with the claimant receiving $21,000. Because the claimant's damages exceeded $21,000 she therefore sought payment under the underinsured motorist coverage of certain applicable policies. The Supreme Court reversed the trial court's judgment and rejected the claimant's argument that only the amount actually paid to her under the tortfeasor's liability policy should be considered in determining whether the operator of the automobile was underinsured. Id., 636–37.

Underinsured Motorist Coverage (1993) § 1.6.3, p. 39; see also General Statutes § 38a-336a (c).

Nothing in the plain language of § 38a-336a, the legislative history of Public Acts 1993, No. 93-297, § 2, as amended by Public Acts 1996, No. 96-180, Public Acts 1996, No. 96-227, or any cases cited by the plaintiff support the plaintiff's contention that underinsured motorist conversion coverage does not fall within the mandates of § 38a-336. On the other hand, one authority has noted that when underinsured motorist conversion coverage is "purchased, all of the mandates as set forth in . . . § 38a-336 would apply except to the extent they are specifically excepted by the statutory scheme as articulated by . . . § 38a-336a." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (Sup. 1997) § 1.7, p. S-25.

This view is in accord with the plain language of General Statutes § 38a-338, which provides in pertinent part: "Policies deemed to provide coverage in accordance with regulations. Policies affording bodily injury liability, property damage liability and uninsured motorist coverages to which the provisions of sections 38a-334 to 38a-336a, inclusive, 38a-338 and 38a-340 apply shall be deemed to provide insurance under such coverages in accordance with such regulations. . . ." This statute clearly applies to the underinsured motorist conversion coverage provided by § 38a-336a, as included within the class of uninsured motorist coverages, and incorporates any exclusions in the applicable policy which are permitted by the insurance regulations.

Accordingly, the plaintiff is barred from recovering underinsured motorist benefits under the policy pursuant to the holding of *Lowrey* v. *Valley Forge Ins. Co.*, supra, 224 Conn. 152. The *Lowrey* court stated that " '[u]nderinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person

not the vehicle. Here, however, the [plaintiffs] have already collected under the liability coverage of the insurer of the [named insured's] car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an "underinsured motor vehicle" to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.' " Id., 158, quoting *Myers* v. *State Farm Mutual Automobile Ins. Co.*, 336 N.W.2d 288, 291 (Minn. 1983). It may have been paradoxical or a misnomer to have this new type of coverage labeled "conversion coverage" in the light of the language used in *Lowrey*, however, it is evident that there never was an intent, either in the policy, in the statutory language, or in the legislative history, to transform first-party coverage into third-party coverage. Rather, the principal purpose of underinsured motorist conversion coverage was to provide the consumer with a more expensive, optional form of underinsured motorist coverage to address the adverse consequences in *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 569 A.2d 1105 (1990).

The plain language of the policy exclusion makes it clear that the exclusion applies to the Greger vehicle. The vehicle involved in the accident was owned by Greger, who was a named insured under the policy. Moreover, the exclusion in Greger's policy is almost identical to § 38a-334-6 (c) (2) (A) of the Regulations of Connecticut State Agencies.[4] Addressing this same

---

[4] Section 38a-334-6 (c) (2) (A) of the Regulations of Connecticut State Agencies provides in pertinent part that "[t]he insurer's obligations to pay may be made inapplicable . . . if the uninsured motor vehicle is owned by . . . the named insured or any relative who is a resident of the same house-

regulation, the *Lowrey* court stated that "[a] comparison of the exclusion with the regulation makes it equally clear that the exclusion was authorized by the regulation and is therefore valid. . . . In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision. . . . That congruence is present here." (Citations omitted; internal quotation marks omitted.) *Lowrey* v. *Valley Forge Ins. Co.*, supra, 224 Conn. 156. Likewise, the same is true in the present case. Thus, the exclusion was valid.

## IV

## CONCLUSION

In sum, the court concludes that the plaintiff's claim that Greger's vehicle was an underinsured motor vehicle under the terms of the policy, and hence entitled to conversion coverage, is defeated by the "owned by the insured" exclusion under the circumstances of the present case.

There are no genuine issues of material fact in dispute as to whether the Greger vehicle was an "underinsured motor vehicle" entitled to benefits under the policy. The defendant, therefore, is entitled to judgment as a matter of law.

Accordingly, for the aforestated reasons, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.

---

hold or is furnished for the regular use of any of the foregoing. . . ."

The exclusion under the Greger policy provides: "However, *uninsured motor vehicle* does not include any vehicle: 1. Owned by or furnished or available for the regular use of you or any *family member* . . . ." (Emphasis in original.)