ANTHONY VITTI *v.* ALLSTATE INSURANCE
COMPANY
(SC 15734)

Callahan, C. J., and Borden, Katz, Palmer and McDonald, Js.

---

Argued February 17—officially released June 30, 1998

*Linda L. Morkan,* for the appellant (defendant).

*John Jowdy,* for the appellee (plaintiff).

*Susan M. Phillips* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Jon S. Berk* and *Claudia A. Baio* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

CALLAHAN, C. J. The sole issue in this appeal is whether an insurer is entitled to a reduction of its limits of liability for uninsured and underinsured motorist coverage (underinsured motorist coverage) by an amount equal to the sum of social security disability benefits paid or payable to the insured. The trial court concluded that allowing such a reduction would be contrary to public policy. The defendant, Allstate Insurance Company, appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023,

now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The parties have stipulated to the facts. On March 30, 1990, the plaintiff, Anthony Vitti, was a passenger in a motor vehicle, owned by him and operated by his wife, Joanne Vitti, when his vehicle was involved in a collision with a motor vehicle owned and operated by Pamela R. Ruokonen. The accident, in which the plaintiff sustained serious injuries, was attributable solely to Ruokonen's negligence. At the time of the accident, the limit of Ruokonen's liability coverage was $20,000, the entire amount of which was paid to the plaintiff by Ruokonen's liability carrier. The plaintiff then sought recovery under his own automobile insurance policy, issued by the defendant, which policy provided for uninsured and underinsured motorist coverage for two vehicles in the amount of $100,000 per covered vehicle. The plaintiff is entitled under his own policy, therefore, to coverage of up to $200,000, less any applicable offsets to the limits of the defendant's liability.

The parties agree that the $200,000 limit of the defendant's liability should be reduced by the $20,000 paid to the plaintiff by Ruokonen's insurer and by the $5000 paid by the defendant to the plaintiff as basic reparations benefits. The parties also agree that the plaintiff's injuries would, in the absence of further offsets, entitle him to collect the entire remaining balance of the defendant's policy. It was determined on April 1, 1991, however, that because the plaintiff was totally disabled as a result of the accident,[1] he was entitled to disability

---

[1] The stipulation of facts does not expressly state that the disability for which the plaintiff is receiving social security disability benefits was attributable solely to the accident. The parties do not dispute this fact, however, and we, like the trial court, assume it to be true. Clearly, the receipt of social security disability benefits for a disability that is unrelated to the accident for which the plaintiff is claiming uninsured or underinsured motorist coverage could not be allowed as a limitation of that coverage. "Implicit

benefits pursuant to a social security medical determination of impairment made in accordance with 42 U.S.C. § 423 and 20 C.F.R. § 404.1 et seq. As a consequence, prior to the time of trial, the plaintiff had received social security disability benefits in the amount of $63,577. The trial court also found that the present value of future social security disability benefits, as noted in an affidavit submitted by the defendant's expert and undisputed by the plaintiff, is $83,393. The amount of social security disability benefits paid or payable to the plaintiff, for which the defendant claims an offset against its liability, is, therefore, $146,970. If we agree with the defendant's claim, the defendant is obligated to the plaintiff for only $28,030 in underinsured motorist benefits. The defendant requests that, if we conclude that the available underinsured motorist coverage may be offset by the amount of social security disability benefits paid or payable to the plaintiff, we direct the trial court to render a judgment for the plaintiff in the amount of $28,030.[2]

The sole dispute between the parties is whether the defendant may offset the amount of underinsured motorist coverage available to the plaintiff by the amount of social security disability benefits paid or payable to the plaintiff. Section 38a-334-6 (d) (2)[3] of

in the statutory scheme of [General Statutes § 38a-336] . . . is the common-sensical requirement that the underinsured vehicle be causally connected to the loss for which the claimant seeks compensation." *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 398, 579 A.2d 525 (1990); see also *Gentry* v. *Wise*, 537 N.W.2d 732, 737 (Iowa 1995).

[2] The defendant already has paid this amount to the plaintiff. There is no dispute as to this figure if the defendant should prevail.

[3] Section 38a-334-6 (d), formerly § 38-175a-6, of the Regulations of Connecticut State Agencies provides in relevant part: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, *except that the policy may provide for the reduction of limits to the extent that damages have been*

"(1) paid by or on behalf of any person responsible for the injury,

"(2) *paid or are payable under* any workers' compensation or *disability benefits law,* or

the Regulations of Connecticut State Agencies, and the policy issued to the plaintiff,[4] which materially tracks the regulatory language, permit the defendant to reduce the amount payable pursuant to a claim for uninsured or underinsured motorist coverage, in the language of the policy, by "all amounts paid or payable under any worker's compensation law, disability benefits law, or similar law." The defendant argues that social security disability benefits are clearly payable to the plaintiff under a "disability benefits law," and, consequently, are properly offset against the plaintiff's available underinsured motorist coverage.

The plaintiff counters that because neither his insurance policy nor the regulation specifically refers to *social security* disability benefits, they are vague and ambiguous. Accordingly, he maintains that the policy should be construed against the insurer so as not to allow social security disability benefits as an offset. He argues that the regulation must be narrowly construed to apply only to those disability benefits laws that are like workers' compensation laws.[5] Alternatively, he

"(3) paid under the policy in settlement of a liability claim. . . ." (Emphasis added.)

[4] The policy, in the section entitled "Limits of Liability," provides in relevant part: "The limits of this coverage will be reduced by . . . 2. all amounts paid or payable under any worker[s'] compensation law, disability benefits law, or similar law.".

[5] The plaintiff maintains that we must interpret the regulation as if "workers' compensation" were the dispositive term and that the subsequent reference to "disability benefits" applies only to those disability benefits laws that provide compensation to employees disabled while in the course of their employment. He also argues that because social security disability benefits are different from workers' compensation benefits, the regulation should not be viewed as including social security disability benefits. We are unpersuaded. There is no indication that the clause was intended to be so limited. The two types of laws are placed in the disjunctive, and, absent any indication that one is subordinate to the other or that one is meant to define the other, each phrase must be given equal weight as an independent limitation.

The plaintiff cited to twelve state laws providing disability benefits as examples of what the legislature may have meant by the phrase "disability

argues that if § 38a-334-6 (d) (2) does permit the defendant to offset social security disability benefits, it is contrary to the public policy underlying our uninsured and underinsured motorist statute and beyond the scope of the statute authorizing the commissioner to promulgate regulations, and is, therefore, void.

"Interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . Unlike certain other contracts, however, where absent statutory warranty or definitive contract language the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . ." (Citations omitted.) *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991). Moreover, we have concluded that "an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage *except as § 38-175a-6 [now § 38a-334-6] of the Regulations of Connecticut State Agencies expressly authorizes. . . . Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 483, 518 A.2d 373 (1986) . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 377–78, 593 A.2d

benefits laws" if it did not mean to include social security disability benefits laws. For example, he refers to laws providing disability benefits for probate judges; General Statutes § 45a-40; municipal workers; General Statutes § 7-432; bank officers and directors; General Statutes § 36a-100; schoolteachers; General Statutes § 10-183aa; state police officers; General Statutes § 5-142; sheriffs; General Statutes § 5-142a; chief inspectors; General Statutes § 51-286; and credit union employees; General Statutes § 36a-454. Many of the laws cited are no more similar to workers' compensation laws than is the Social Security Act. Moreover, if the commissioner had intended that the regulation be circumscribed to address only a limited number of laws, then he easily could have said so rather than rely on the creative linguistic and grammatical explanation posited by the plaintiff.

498 (1991). Consequently, we must interpret § 38a-334-6 (d) (2) and determine its validity. If the regulation is valid, the contract language will be enforceable because it parallels the regulation. Our review of the regulation and the authorizing statute is plenary. See *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995); *Diamond* v. *Marcinek*, 226 Conn. 737, 744 n.8, 629 A.2d 350 (1993).

The question of whether an insurer may offset, pursuant to § 38a-334-6 (d) (2), the available limits of coverage by the amount of social security disability benefits paid or payable to an insured is one of first impression for this court. Although we previously have interpreted this regulation and the attendant public policy considerations underlying the uninsured or underinsured motorist statute, we have done so in the context of other permitted offsets. See, e.g., *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 15, 615 A.2d 1032 (1992) (unclaimed workers' compensation benefits); *Wilson* v. *Security Ins. Co.*, 213 Conn. 532, 538, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990), cert. denied, 502 U.S. 1005, 112 S. Ct. 640, 116 L. Ed. 2d 658 (1991) (claimed workers' compensation benefits); *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 370 A.2d 1011 (1976) (amounts received from negligent tortfeasor).[6]

---

[6] The parties each point to decisions from other jurisdictions for guidance in deciding the public policy considerations relevant to this issue. The plaintiff points to the decision of the Colorado Supreme Court in *Barnett* v. *American Family Mutual Ins. Co.*, 843 P.2d 1302, 1305–1306 (Colo. 1993), which concluded that an offset of social security disability benefits would be violative of Colorado public policy. The defendant directs our attention to *Gentry* v. *Wise*, 537 N.W.2d 732, 735 (Iowa 1995), in which the court found such an offset permissible.

Neither the Iowa nor the Colorado statutory scheme coincides with that of Connecticut, the former being of broader scope and the latter more narrow. We have stated that " '[r]egardless of how persuasive the public policy stated by the [court of a foreign jurisdiction] may be, this court cannot premise a decision based on public policy in defiance of state statutes or valid administrative regulations.' " *Rydingsword* v. *Liberty Mutual Ins. Co.*,

We begin our analysis with the relevant provision of the insurance contract, which provides that "[t]he limits of this [uninsured or underinsured motorist] coverage will be reduced by . . . 2. *all amounts paid or payable under any* worker[s'] compensation law, *disability benefits law,* or similar law." (Emphasis added.) "The Connecticut rule of construction of insurance policies is well settled. If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted; but if they are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and the courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Internal quotation marks omitted.) *Rydingsword* v. *Liberty Mutual Ins. Co.,* supra, 224 Conn. 15. Additionally, if the policy comports with the language of the regulation, it will be deemed to provide that same level of protection permitted by the regulation. Id., 15–16. "In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Internal quotation marks omitted.) *Lowrey* v. *Valley Forge Ins. Co.,* 224 Conn. 152, 156, 617 A.2d 454 (1992). The terms in the policy issued by the defendant and § 38a-334-6 (d) (2) correspond in all material respects.[7] "We can perceive no incongruence between

supra, 224 Conn. 19. We decline, therefore, the invitation of the parties to rely on the precedent of either jurisdiction.

[7] The plaintiff argues that the insurance policy alters the language of the regulation when it states "any worker[s'] compensation law, disability benefits law, or similar law" rather than "any workers' compensation or disability benefits law." We conclude that the addition of the word "law" and a comma after "compensation" in place of the word "or" does not change the meaning of the phrase used in the regulation, and that the policy

the regulation and the policy exclusion that would suggest that the policy exclusion was not authorized by the regulation." Id., 157. Consequently, if § 38a-334-6 (d) (2) permits an offset for social security disability benefits, the policy language must be deemed to provide the defendant with a legitimate offset. See *Roy* v. *Centennial Ins. Co.*, supra, 171 Conn. 466.

Although the parties advance differing meanings of the phrase "any . . . disability benefits law," we conclude that the phrase is not ambiguous. The plaintiff argues that this phrase is vague and ambiguous because it does not expressly state that social security disability benefits are a limitation on coverage. The plaintiff suggests that if the commissioner intended to *include* social security disability benefits as a limitation on coverage, a statement to that effect certainly would have been set forth expressly in a separate subdivision. To the contrary, we believe that the commissioner would have included a separate subdivision only if the intent was to *exclude* social security disability benefits from the broad scope of the limitation for *"any . . . disability benefits law."* (Emphasis added.) The commissioner included no such limitation and, therefore, we presume that the regulation intends none. Moreover, we fail to see how the regulation could have stated more clearly that it intended to include *all* laws providing disability benefits, including those governing social security disability benefits.

"[A] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply

comports with the regulation. The change merely reflects a grammatical necessity stemming from the defendant's addition of a third clause in an effort to ensure that the limitations of liability in the policy would be as comprehensive as the regulation would permit. Accordingly, the only material phrase is "any . . . disability benefits law." That phrase is the same in both the policy and the regulation.

because lawyers or laymen contend for different meanings . . . ." (Internal quotation marks omitted.) *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 483, 697 A.2d 680 (1997) (interpreting insurance policy language); *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 656, 708 A.2d 202 (1998) (interpreting statutory language). "Our rules of statutory construction apply to administrative regulations. . . ." (Citation omitted; internal quotation marks omitted.) *Diamond* v. *Marcinek*, supra, 226 Conn. 744 n.8; *Preston* v. *Dept. of Environmental Protection*, 218 Conn. 821, 829 n.9, 591 A.2d 421 (1991). "[I]n the absence of other statutory [or regulatory] guidance, we may appropriately look to the meaning of the word[s] as commonly expressed in the law and in dictionaries." *State* v. *Woods*, 234 Conn. 301, 309, 662 A.2d 732 (1995).

The text of § 38a-334-6 (d) (2) does not indicate an intention to assign anything other than the ordinary and common meaning to the words in the phrase "any . . . disability benefits law . . . ." The ordinary definition of "disability" includes "the inability to pursue an occupation or perform services for wages because of physical or mental impairment . . . ." Webster's Third New International Dictionary. The term "benefit" is defined to include "financial help in a time of sickness, old age, or unemployment . . . ." Webster's Third New International Dictionary. "Law" is defined as "a rule or mode of conduct or action that is prescribed or formally recognized as binding by a supreme controlling authority . . . ." Webster's Third New International Dictionary. When the ordinary meaning of these terms is applied to the regulatory language, it is clear that disability benefits paid or payable pursuant to the Social Security Act, 42 U.S.C. § 301 et seq.,[8] are "amounts paid or payable under any . . . disability benefits law . . . ."

---

[8] Payment of benefits pursuant to the disability insurance provisions of the Social Security Act are governed specifically by 42 U.S.C. § 420 et seq.

Consequently, we conclude that both § 38a-334-6 (d) (2) and the insurance policy, which tracks the language of the regulation, unambiguously allow the defendant to offset the available uninsured or underinsured motorist coverage by the amount of social security disability benefits paid or payable to the plaintiff. We can divine no other meaning.[9]

The plaintiff argues, in the alternative, that if § 38a-334-6 (d) (2) does permit an insurer to offset its liability by the amount of social security disability benefits paid or payable to the insured, then the regulation is invalid because it is not within the scope of the authorizing statute and is contrary to the legislature's intent in enacting the uninsured and underinsured motorist coverage statute. This argument rests upon the plaintiff's interpretation of the public policy considerations underlying the enactment of General Statutes § 38a-336.[10]

[9] We note that the leading treatise regarding Connecticut's uninsured motorist law, in describing the scope of the term "disability benefits law," recognized that "[§ 38a-334-6 (d) (2)] would be applicable, for instance, if Social Security disability benefits have been paid pursuant to a determination of the Social Security Administration." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 6.3.1, p. 224. Although we do not defer to the interpretation of § 38a-334-6 (d) (2) by the authors, we find it telling that social security disability benefits was the only example of an offset proffered by the leading text in the area of uninsured and underinsured motorist coverage in Connecticut. It certainly indicates that there is an informed understanding that the term "disability benefits law" includes social security disability benefits.

[10] General Statutes § 38a-336, formerly § 38-175c, provides in relevant part: "(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured and underinsured motorists coverage with limits requested by any named insured upon payment of the appropriate premium, provided

According to the plaintiff, the legislature could not have intended to permit an offset by the amount of social security disability benefits paid or payable to the insured because to do so would place the insured in a worse position than one who brings a claim against an adequately insured tortfeasor. The plaintiff maintains that the legislature intended that the victim of either an adequately insured tortfeasor or an inadequately insured tortfeasor be in exactly the same position. He relies on our previous statement that "[t]he public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured [or underinsured] motorist had maintained a policy of [adequate] liability insurance." *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982); accord *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 774–75, 621 A.2d 262 (1993); *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 18.[11]

In support, the plaintiff assumes, without citing any legal authority, that the collateral source doctrine,

each such insurer shall offer such coverage with limits that are twice the limits of the bodily injury coverage of the policy issued to the named insured. . . ."

[11] The brief of the amicus curiae, the Connecticut Trial Lawyers Association, supports the plaintiff's argument by asserting that the legislature has, by statute, placed persons suing the tortfeasor and those claiming against their own uninsured or underinsured motorist coverage in the same position. It maintains, therefore, that if § 38a-334-6 (d) (2) permits an offset by the amount of social security disability benefits, it is an unconstitutional violation of the equal protection clauses of the state and federal constitutions. The parties did not raise this argument at trial, in briefs or at oral argument. "Absent extraordinary circumstances not present here, we will not determine a constitutional question of first impression that was neither raised at trial nor relied upon by the parties on appeal." *In re Bruce R.*, 234 Conn. 194, 215 n.16, 662 A.2d 107 (1995). We note, however, that our conclusion that the party seeking uninsured or underinsured motorist benefits is not in the same position as the party claiming directly against the tortfeasor undermines the fundamental premise of this argument.

embodied in General Statutes §§ 52-225a and 52-225b,[12] would not permit a tortfeasor or the tortfeasor's insurer to offset social security disability benefits against a tort judgment. That question has not been addressed by this court or the Appellate Court and is currently undecided. Moreover, that particular issue is not before us and we need not address it. Because the plaintiff's assumption is central to his argument, however, we accept, for the sake of argument, that it is correct; on that assumption, however, we do not agree with the plaintiff's conclusion that an insurer consequently may not deduct social security disability benefits from uninsured and underinsured motorist coverage limits.

The plaintiff has a difficult task to demonstrate that § 38a-334-6 (d) (2) is beyond the scope of the insurance commissioner's authority. *Mass* v. *United States Fidelity & Guaranty Co.*, 222 Conn. 631, 649, 610 A.2d 1185 (1992); *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 399, 579 A.2d 525 (1990). The commissioner is specifically authorized by statute to promulgate regulations regarding "exclusions, conditions and other terms applicable to . . . uninsured motorists coverages . . . ."[13] Gen-

---

[12] General Statutes § 52-225a (a) provides in relevant part: "In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section . . . ."

General Statutes § 52-225b provides in relevant part: " 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others . . . . 'Collateral sources' do not include amounts received by a claimant as a settlement."

[13] Reductions to the limits of liability, commonly referred to as offsets, are exclusions in an insurance policy. See J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 3.2, pp. 106–107.

eral Statutes § 38a-334 (a).[14] "Regulations issued by the insurance commissioner to implement the statutes governing uninsured [and underinsured] motorist coverage are presumed valid and have the force and effect of a statute." *Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn. 631, 641, 587 A.2d 415 (1991); *Lumbermens Mutual Casualty Co.* v. *Huntley*, 223 Conn. 22, 30 n.11, 610 A.2d 1292 (1992); *Travelers Ins. Co.* v. *Kulla*, supra, 394. The "person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant. . . . [Furthermore], the insurance commissioner has a very broad grant of regulatory authority in filling in the interstices of the uninsured and underinsured motorist coverage legislation, and in doing so his regulation is entitled to great deference." (Citation omitted; internal quotation marks omitted.) *Mass* v. *United States Fidelity & Guaranty Co.*, supra, 649; *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 18 n.16; *Dugas* v. *Lumbermens Mutual Casualty Co.*, supra, 643; *Roy* v. *Centennial Ins. Co.*, supra, 171 Conn. 473.

We have acknowledged that "[n]ot only is the commissioner obligated to adopt regulations with respect to the minimum provisions to be included in the policy of insurance issued in this state; General Statutes § 38a-334; *we presume that these regulations are 'an accurate reflection of the legislative intent articulated in the statute's more general language.'* " (Emphasis added.) *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206,

---

[14] General Statutes § 38a-334 (a) provides in relevant part: "The Insurance Commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations . . . . Such regulations shall relate to the insuring agreements, *exclusions*, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and *uninsured motorists coverages under such policies, shall make mandatory the inclusion of* bodily injury liability, property damage liability and *uninsured motorists coverages* . . . ." (Emphasis added.)

211, 603 A.2d 385 (1992); accord *AFSCME* v. *New Britain*, 206 Conn. 465, 470, 538 A.2d 1022 (1988); *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, 202 Conn. 583, 599–600, 522 A.2d 771 (1987). This presumption is enhanced when the regulation has been in existence for a long period of time and has been legislatively approved. "The fact that the commissioner's regulation has been approved by the standing legislative regulation review committee,[15] although not dispositive of the issue before us, is an *important consideration* in our determination of whether the commissioner's regulation comports with the legislative intent . . . ." (Emphasis in original.) *Dugas* v. *Lumbermens Mutual Casualty Co.*, supra, 217 Conn. 643. "If a regulation has been in existence for a substantial period of time and the legislature has not sought to override the regulation, this fact, although not determinative, provides persuasive evidence of the continued validity of the regulation." Id., 642. As we noted in *Lumbermens Mutual Casualty Co.* v. *Huntley*, supra, 223 Conn. 30, "[s]ince 1979, when underinsured motorist coverage was mandated, [§ 38a-336] has been amended five times, yet, the legislature has never taken action to prohibit an underinsured motorist carrier from reducing payment to its insured in accordance with the regulations." In light of the strong presumption in favor of the validity of the regulation, we cannot conclude that the commissioner acted outside the scope of his authority in permitting an insurer to offset social security disability benefits solely because such an offset in the case of an adequately insured tortfeasor might not be permitted.

Although compensating the victim of an underinsured motorist as if the tortfeasor were adequately insured

---

[15] General Statutes § 4-170 (a), requiring approval of regulations by the legislative review committee, provides in relevant part: "There shall be a standing legislative committee to review all regulations of the several state departments and agencies following the proposal thereof . . . ."

is a general public policy objective of the uninsured motorist statute; *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 774–75; *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 18; *Harvey* v. *Travelers Indemnity Co.*, supra, 188 Conn. 249; we have concluded that other policy considerations preclude conferring the selfsame rights on both the victim of an adequately insured tortfeasor and the victim of an inadequately insured tortfeasor. See generally *Buell* v. *American Universal Ins. Co.*, supra, 774–75 (settlement payment by one who may or may not be responsible for harm to insured); *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 17–18 (unclaimed workers' compensation benefits); *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 538 (workers' compensation benefits); *Roy* v. *Centennial Ins. Co.*, supra, 171 Conn. 475 (settlement by tortfeasor). "As we have earlier observed, '[t]he plain words of . . . [§ 38a-336] simply require that each policy provide *a minimum level of uninsured [and underinsured] motorist coverage* "for the protection of persons insured thereunder." The statute does not require that uninsured motorist coverage be made available when the insured has been otherwise protected . . . . Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies; *the insurance commissioner has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of "protection." '* . . . *Roy* v. *Centennial Ins. Co.*, [supra, 171 Conn. 472–73]." (Emphasis added.) *Wilson* v. *Security Ins. Co.*, supra, 538; *Buell* v. *American Universal Ins. Co.*, supra, 774–75; *Lumbermens Mutual Casualty Co.* v. *Huntley*, supra, 223

Conn. 29–30; see also *Bouley* v. *Norwich*, 222 Conn. 744, 757, 610 A.2d 1245 (1992) (uninsured and underinsured motorist coverage is "less an independent source of recovery than it is a 'safety net' ").

The legislature has acquiesced in this interpretation of § 38a-334-6 (d) (2) as providing minimum compensation, limited by alternative sources available to the insured, as determined in the discretion of the insurance commissioner. *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 538–39. We noted in *Wilson* that although "the legislature is presumed to be aware of the judicial construction placed on its enactments," it has made no amendment to § 38a-334, which grants the commissioner discretion to promulgate the applicable regulations, that would indicate its disapproval of our interpretation of § 38a-334-6 (d). Id., 539. Moreover, in the eight years since *Wilson*, the legislature has yet to evince disapproval of this interpretation, even in light of our recent reiteration in *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 774–75. We find nothing to support the claim that the legislature intended a contrary construction of the statute.

Accordingly, the general objective of equivalent recovery is limited by an insurer's regulatory authority to reduce the limits of liability as permitted by § 38a-334-6 (d), as long as the insured retains a minimum level of protection as mandated by statute. See *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 774; *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 18; *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 538; *Roy* v. *Centennial Ins. Co.*, supra, 171 Conn. 475. In the underinsured motorist coverage context, the minimum amount of compensation that the insured is entitled to receive is equivalent to the amount of underinsured motorist protection that the insured carried. General Statutes § 38a-336 (b) and (e).[16]

---

[16] General Statutes § 38a-336 provides in relevant part: "(b) . . . [I]n no event shall the total amount of recovery from all policies, including any

In addition to the statute's primary policy objective of providing some minimum level of compensation for the victims of inadequately insured motorists by assuring that they are compensated in an amount equal to the level of their own uninsured motorist coverage; *Mass* v. *United States Fidelity & Guaranty Co.*, supra, 222 Conn. 647; § 38a-334-6 (d) of the regulations furthers the additional policy objective of adhering to the "time-honored rule that an injured party is entitled to full recovery only once for the harm suffered."[17] *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 775; *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 18. In accomplishing the myriad and difficult policy objectives inherent in the uninsured and underinsured motorist coverage statute, the legislature expressly left to the sound discretion of the insurance commissioner the authority to develop regulations pertaining to exclusions, including appropriate reductions to the limits of liability. General Statutes § 38a-334 (a); *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 538. We previously have concluded that it expressly has been left to the *commissioner* to determine whether an alternative source of recovery available to the insured should be an applicable offset; see, e.g., id.; and that a

amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . .

"(e) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under section (b) of this section. . . ."

[17] General Statutes § 38a-336 (b) emphasizes this objective by mandating that "in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . ." The legislature has made clear that the goal is minimum coverage, not maximum recovery up to the full extent of the plaintiff's injuries. See *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 537–38.

duly promulgated regulation has the force and effect of statute. See, e.g., *Dugas* v. *Lumbermens Mutual Casualty Co.*, supra, 217 Conn. 641. "Section [38a-336] does not specifically prohibit the adoption of a regulation permitting the reduction of uninsured [and underinsured] motorist coverage, whereas [§ 38a-334] explicitly authorized the commission[er] to adopt regulations relating to the insuring agreements, exclusions, conditions and other terms applicable to . . . uninsured [and underinsured] motorist coverages." (Internal quotation marks omitted.) *Wilson* v. *Security Ins. Co.*, supra, 538. Consequently, we defer to the plain language of § 38a-334-6 (d) (2), the regulation adopted by the commissioner, in determining whether an insurer should be permitted to offset its liability for uninsured or underinsured motorist coverage by a potential alternative resource that is available to the insured. See, e.g., *Buell* v. *American Universal Ins. Co.*, supra, 774–75 (settlement payment by one who may or may not be responsible for harm to insured); *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 17–18 (deference regarding unclaimed workers' compensation benefits); *Wilson* v. *Security Ins. Co.*, supra, 538 (workers' compensation benefits); *Roy* v. *Centennial Ins. Co.*, supra, 171 Conn. 475 (settlement by tortfeasor).

Furthermore, we are not persuaded that the insured's recovery from the insurer must always be identical to that which could be obtained from an adequately insured tortfeasor. We previously have concluded that the insurer "is not the alter ego of the tortfeasor and . . . they do not share the same legal [status]." (Internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 25, 699 A.2d 964 (1997); *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 385, 698 A.2d 859 (1997); *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 817, 695 A.2d 1010 (1997). It is not necessary, therefore, that an uninsured and underinsured motorist

coverage carrier and a tortfeasor invariably be treated the same for all purposes and necessarily be entitled to only the same reductions in liability. The right of an insurer to offset the limits of liability for uninsured and underinsured motorist coverage is controlled by § 38a-334-6. See *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, 219 Conn. 377 (" 'insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage *except as [§ 38a-334-6] . . . expressly authorizes*' " [emphasis added]); *Allstate Ins. Co.* v. *Ferrante*, supra, 201 Conn. 482–83.[18] It would be inappropriate, therefore, to look anywhere other than § 38a-334-6 to determine what alternative resources available to the insured will be considered an applicable offset. Because of the exclusive application of the regulation to uninsured and underinsured motorist coverage, it is irrelevant that the receipt of the same resource might not be considered a double recovery against a first-party tortfeasor. Consequently, we decline the

---

[18] In *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 570–72, 624 A.2d 892 (1993), we concluded that § 52-225a does not affect the amount of coverage available pursuant to an uninsured and underinsured motorist policy. We concluded that § 52-225a "defines the offset for collateral source payments as reducing awards for economic damages resulting from personal injury or wrongful death. A claim concerning coverage under an insurance policy does not, in common parlance, give rise to an award for damages of any kind, let alone to an award for damages resulting from personal injury or wrongful death." Id., 570. Consequently, coverage pursuant to a policy for uninsured and underinsured motorist coverage is *not* controlled by the collateral source rule. The singular applicability of the collateral source rule to a claim for uninsured or underinsured motorist coverage is to permit an insurer to reduce the amount of damages sustained by the claimant by the amount of "collateral source payments" received by the claimant. Id., 573. That which may or may not qualify as a collateral source under § 52-225a does not control the determination of which offsets are applicable in the uninsured and underinsured motorist context. As we concluded in *Smith*, neither § 38a-336 nor the corresponding regulation, § 38a-334-6, permit reference to § 52-225a in determining appropriate limitations and exclusions. Id., 571–72. Rather, § 38a-334-6 (d) exclusively governs "the grounds upon which such [uninsured and underinsured] insurance may be excluded or limited." Id., 572.

plaintiff's invitation to look to the collateral source doctrine, applicable to first party suits against a tortfeasor, for guidance in interpreting what alternative sources of payment would constitute a double recovery in the area of uninsured and underinsured motorist coverage.[19]

Moreover, we never have said that an uninsured motorist claimant must have the same level of benefits available as a plaintiff suing a tortfeasor directly. Rather, we have stated that "[t]he purpose of [§ 38a-336] is to compensate an insured *to the same extent* as he would have been if he had been injured by a motorist carrying liability insurance equal to the [uninsured motorist] coverage carried by the insured . . . ." (Emphasis added.) *Mass* v. *United States Fidelity & Guaranty Co.*, supra, 222 Conn. 647. That is not the same thing as saying that the insured must be in exactly the same position as an injured plaintiff suing a tortfeasor. It merely requires that the amount of overall benefits available to a plaintiff be equal to the amount of *coverage* available from a tortfeasor with an equivalent policy.[20] Consequently, the plaintiff here must be compensated, from all available sources, in the amount that

---

[19] We further note that accepting the plaintiff's argument would require us to conclude that the portion of § 38a-334-6 (d) (2) relating to disability benefits law, which antedates § 52-225a by a decade, was repealed by implication when the legislature adopted § 52-225a. Our rules of construction strongly disfavor " 'the implied repeal of a regulation by a [subsequent] statute, especially where, as in the present case, the regulation at issue has been approved by the legislative review committee.' *Dugas* v. *Lumbermens Mutual Casualty Co.*, [supra, 217 Conn. 641]." *Lowrey* v. *Valley Forge Ins. Co.*, supra, 224 Conn. 162; *Lumbermens Mutual Casualty Co.* v. *Huntley*, supra, 223 Conn. 30 n.11. We already have concluded in *Smith* v. *Safeco Ins. Co. of America*, supra, 225 Conn. 570–72, that § 52-225a does not apply to claims for uninsured and underinsured motorist coverage. See footnote 18 of this opinion. We cannot conclude, therefore, that the regulation was impliedly repealed.

[20] We are not unmindful of the language in *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 27, in which we stated that the purpose of the uninsured and underinsured motorist statute is to put the insured in "the

would have been available if the tortfeasor had carried a policy limit of $200,000, which is the amount equal to the plaintiff's coverage. Allowing an offset for social security disability benefits, the plaintiff will receive $200,000 from all sources, i.e., $20,000 from the tortfeasor, $5000 in basic reparations, $146,970 in social security disability benefits, and $28,030 from his underinsured motorist coverage.

Commencing with our earliest interpretation of § 38a-334-6 (d), we have recognized that in attempting to accomplish the twin policy objectives of uninsured motorist coverage of providing coverage as if the tortfeasor had been adequately insured, and at the same time precluding double recovery, "the regulations of the insurance commissioner may present some apparently anomalous results under certain circumstances." *Roy* v. *Centennial Ins. Co.*, supra, 171 Conn. 474–75. As a result of the application of § 38a-334-6 (d), injured individuals have often been left in different positions, some better and some worse, depending on various factors relating to the limits of coverage and available resources. Id., 475. This is a necessary, and not unacceptable, reality of this state's uninsured motorist scheme. "The purpose of mandatory insurance, minimum liability insurance levels, and uninsured motorists protection requirements can only be to ensure that certain minimum protections are afforded all motorists. *These statutory devices cannot serve to eliminate all differences in treatment which may result to an*

same position as, but no better position than, the insured would have been had the underinsured tortfeasor been fully insured." The statement in *Haynes* was merely a shorthand of our statement in *Mass* v. *United States Fidelity & Guaranty Co.*, supra, 222 Conn. 647, and cannot be interpreted to mean more than our statement to the same effect in *Mass* ("[t]he purpose of § [38a-336] is to compensate an insured *to the same extent* as he would have been if he had been injured by a motorist carrying liability insurance equal to the [uninsured motorist] coverage carried by the insured" [emphasis added]).

*insured due to the varying levels of insurance carried by motorists or because of varying financial resources of motorists.*" (Emphasis added.) Id., 475. The ability to obtain social security disability benefits is a financial resource available to the plaintiff that results in a discrepancy in treatment that the statute and the regulation simply do not attempt to eliminate.

Additionally, we note that we previously have rejected the argument that an insured must recover *from his uninsured motorist coverage carrier* a total amount equal in all respects to that available from the tortfeasor. In *Dugas* v. *Lumbermens Mutual Casualty Co.*, supra, 217 Conn. 646, we concluded that "an insured party injured by a fully insured motorist is able to obtain a contribution from the insurer to his attorney's fees from the amount of reparations benefits reimbursed to the insurer, while an insured party injured by an uninsured motorist is not." Although the conclusion reached in *Dugas* would result in a disparity between the overall recovery from the tortfeasor and that from the uninsured motorist coverage insurer, such disparity was permitted. The legislature may have chosen to allow different treatment between those suing the tortfeasor directly and those suing their carrier for uninsured motorist coverage because identical treatment "would place greater pressure on insurance rates than [the legislature] was willing to tolerate." Id., 647. Because uninsured motorist coverage is mandatory for all insureds, § 38a-334-6 (d) may be interpreted as furthering the goal of keeping uninsured motorist insurance premiums at a reasonable level. The list of applicable offsets to liability provided by § 38a-334-6 (d) draws a fine line between guaranteeing that the insured is adequately compensated and ensuring that premiums for uninsured and underinsured motorist insurance are reasonably affordable.[21]

---

[21] This purpose is evident from the statute itself, which directs the insurance commissioner to consult with representatives of the insurance industry

In *Koskoff, Koskoff & Bieder* v. *Allstate Ins. Co.*, 187 Conn. 451, 454, 446 A.2d 818 (1982), we concluded that permitting offsets to the limits of liability comports with the "general purpose of the no fault legislation, which is to minimize the cost of mandatory insurance coverage by minimizing the amount of benefits paid by the insurer." Likewise, the mandatory nature of uninsured motorist coverage dictates that deference be paid to those public policy choices by the commissioner that serve the goal of keeping premiums down by limiting the liability of the uninsured motorist coverage carrier while at the same time protecting the insured by guaranteeing some minimum level of compensation. Permitting the offset of social security disability benefits against uninsured motorist benefits is one of those policy choices to which deference must be accorded.

"The automobile liability insurance business is one which is extensively regulated . . . and judicial revision of the terms upon which such policies are issued may produce extensive repercussions throughout the insurance industry of the state. In view of the very broad grant of regulatory authority to the insurance commissioner, we are not persuaded that the commissioner was without authority to adopt regulation [§ 38a-334-6 (d)]." (Citation omitted; internal quotation marks omitted.) *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 539; *Roy* v. *Centennial Ins. Co.*, supra, 171 Conn. 473; accord *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 18 n.16. The insurance commissioner has drawn a careful line regarding applicable offsets and has chosen to include among them "any" disability benefits paid pursuant to governing law. Although the plaintiff

before adopting regulations relating to uninsured and underinsured motorist coverage. General Statutes § 38a-334 (b); see also 12 S. Proc., Pt. 4, 1967 Sess., p. 1957, remarks of Senator T. Clark Hull (regarding enactment of statute and contribution of leading representatives from state's insurance industry: "It is, we believe, a practical [proenterprise] answer to the question of compulsory insurance.").

may disagree with the location of that line, "his remedy lies with the legislature or the insurance commissioner, not with this court." *Dugas* v. *Lumbermens Mutual Casualty Co.*, supra, 217 Conn. 647; accord *Roy* v. *Centennial Ins. Co.*, supra, 475.

Finally, we are not persuaded by the argument that the plaintiff may have suffered damages that are not compensable by social security disability benefits, such as pain and suffering or medical expenses.[22] We rejected a similar argument in *Wilson* with respect to an offset for workers' compensation benefits. We concluded that "[w]e see nothing in the language of regulation [§ 38a-334-6 (d)] that quantifies the kinds of damages that must be paid before a valid reduction in uninsured motorist benefits may occur by reason of any payments made pursuant to the workers' compensation law. If damages are paid pursuant to the workers' compensation law, the uninsured motorist coverage may be reduced accordingly." *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 538. The conclusion that social security disability benefits are a substitute for wages is inescapable, and, therefore, such benefits are substantially similar to workers' compensation benefits. Neither workers' compensation nor social security disability benefits compensate for noneconomic damages and are unlike traditional tort damages in that respect. They both provide compensation, however, during periods of inability to work attributable to disability, whether temporary or permanent. Social security disability benefits are payable only if an individual is disabled, which is defined as the "inability to engage in any substantial gainful

---

[22] The plaintiff did not raise this argument. The Connecticut Trial Lawyers Association, as amicus curiae, sets forth this reasoning as a basis for its proposed interpretation of the statute. Although we would not normally address an issue not raised by the parties; see footnote 11 of this opinion; the defendant did address this issue at oral argument. Moreover, because the issue is already resolved in our prior decisions, we simply restate that conclusion for the sake of clarity in future cases.

activity" due to physical or mental impairment. 42 U.S.C. § 423 (a) and (d) (1) (A). Benefits are terminated once the disability lapses and the claimant is able to engage in "gainful activity." 42 U.S.C. § 423 (e). Moreover, social security disability benefits must be reduced by the amount of workers' compensation benefits payable to the claimant; 42 U.S.C. § 424a (a) (2) (A); further indicating that social security disability benefits are meant to provide wage replacement during periods of disability in the same manner as workers' compensation benefits.

Our conclusion is amply supported by our prior analysis of § 38a-334-6 (d) in the context of workers' compensation benefits. In that context, we concluded that offsetting workers' compensation benefits against uninsured motorist coverage benefits ensures compensation while preventing a double recovery because workers' compensation benefits provide an alternative protection available to the insured. *Wilson* v. *Security Ins. Co.*, supra, 213 Conn. 538; *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 19. We discern no material difference between workers' compensation benefits and social security disability benefits in terms of the public policy objectives of § 38a-334-6 (d) (2). Although there are differences between workers' compensation benefits and social security disability benefits, we are not persuaded that they should be treated differently in the context of their relation to the purpose underlying § 38a-334-6 (d) (2), which is to avoid multiple compensation for the same harm. In that context there is no disparity because both workers' compensation and social security disability benefits represent an alternative source of income to replace wages lost owing to the inability to continue gainful employment activity.

We conclude that allowing an offset for social security disability benefits does not conflict with the basic

intent of the uninsured and underinsured motorist statute. Such an offset serves the policy objective of guaranteeing a minimum level of compensation to all motorists in an amount equal to the limit of their own policy. Moreover, it furthers the policy objectives of preventing multiple compensation for the same harm, as determined by the commissioner pursuant to subsection (d), and of limiting the cost of insurance premiums for mandatory uninsured motorist coverage. Consequently, § 38a-334-6 (d) (2), and the insurance policy that echoes its provisions, are valid and permit the insurer to offset the limits of liability by the amount of social security disability benefits paid or payable[23] to the insured.

The judgment of the trial court is reversed and the case is remanded to that court with direction to render judgment for the plaintiff in the amount of $28,030.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

MCDONALD, J., dissenting. In the absence of proof that the plaintiff's social security disability benefits are paid solely as a result of injuries attributable to the automobile accident, I do not believe that payments arising from such benefits should reduce the underinsured motorist coverage. See footnote 1 of the majority opinion.

I also disagree that social security disability benefits are within the language of § 38a-334-6 (d) (2) of the Regulations of Connecticut State Agencies, which permits an insurer to reduce underinsured motorist coverage by amounts paid or payable "under any workers'

---

[23] As we noted in *Rydingsword* with respect to unclaimed workers' compensation benefits, it may be difficult to determine whether benefits that have not been sought by the insured are actually payable. *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 224 Conn. 22 n.21. Adequate evidence must be adduced, and the burden is on the insurer to prove that these social security disability benefits are, in fact, payable to the insured.

compensation or disability benefits law." Social security disability insurance benefits are payable only to those individuals who pay for such coverage over a sufficient period of time, which is measured in units of quarter years. See 42 U.S.C. § 423 (c) (1) (1994); 20 C.F.R. § 404.130 et seq. Furthermore, 42 U.S.C. § 423 identifies such benefits as "disability insurance benefits." Although mandated by law, such benefits are "insurance" benefits purchased by an individual, alike to contractual life, disability or medical insurance benefits. Cf. *Haynes* v. *Yale New Haven Hospital*, 243 Conn. 17, 21, 699 A.2d 964 (1997).

The majority's decision to treat social security disability insurance benefits, for which the injured party pays a premium, no differently than workers' compensation benefits conflicts with the basic intent of the underinsured motorist statute. See General Statutes § 38a-336. This conclusion is supported by the insurance commissioner's regulations, which allow a reduction in underinsured motorist coverage for medical payments and basic reparation benefits paid or payable to the insured under the insured's automobile policy. See Regs., Conn. State Agencies § 38a-334-6 (d) (3). There is no regulation otherwise allowing for a reduction in underinsured motorist coverage for other payable insurance benefits for which the injured party paid premiums.

Accordingly, I respectfully dissent.