[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: COLLATERAL SOURCE REDUCTIONS AND BILL OF COSTS
On March 3, 1999, the jury returned a verdict for the plaintiff in this underinsured motorist action in the total amount of $105,594.44. of that amount, the sum of $90,594.44 was awarded for economic damages and $15,000.00 was awarded for non-economic damages.
The plaintiff earlier recovered $100,000.00 from the tortfeasor. She received $5,000.00 from the defendant by way of no-fault benefits and no portion of that sum has been reimbursed. When reductions for those payments are made, the remaining verdict is $594.44.
At a hearing before this court, the parties agreed the amount of past medical costs paid by the plaintiff's health insurance carrier is less than the total amount of premiums paid during the period of medical treatment. There is therefore no further reduction to be made for these costs.1*
Mrs. DiSantis has received $20,643.00 per year since 1993 in disability income insurance payments; the total to date is $103,215.00. The defendant's position is that this is a collateral source under C.G.S. § 52-225b and cites as further authority Beaupre v. Alamo Rent-A-Car, Inc., 21 Conn. L. Rptr. No. 16, 558 (6/1/98 — O'Neill, J.) (which held that disability payments received under an employee's sick pay plan is a collateral source) and Vitti v. Allstate Insurance Co.,245 Conn. 169 (1998) (which held an insurer in an underinsured motorist claim is entitled to a credit and policy reduction for social security disability payments received).
C.G.S. § 52-225b, in defining what is meant by "collateral sources," does not specifically reference disability insurance payments. Sub-section 1 includes as collateral sources "any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others (emphasis added)." The focus of that sub-section, therefore, is on payments by insurance carriers.[1] The defendant argues the disability payments paid the plaintiff are collateral sources because "other similar CT Page 6359 insurance benefits" and, further, were the court not to make a reduction from the award of economic damages, the result would be a double recovery since responses to interrogatories submitted the jury indicated the total sum awarded for economic damages ($90,594.44) included an award of $36,804.00 for lost wages. The defendant claims a collateral source reduction in the full amount of the wages awarded $36,804.00 — or, alternatively, claims a reduction of $11,205.00.[2] The parties agree the premiums paid for such coverage were not paid by or on behalf of the claimant; thus, if a reduction is appropriate, no credit — or offset — for premiums paid applies. The plaintiffs response is: a) because in derogation of the common law, the statute must be strictly construed and, since not specifically referenced, disability insurance payments were not intended to be collateral sources; and b) to use such payments to further reduce the verdict would, under the circumstances of this case, result in a double reduction since the jury responses to Interrogatory #4a and #4b make clear they reduced the wage loss for a period of five (5) years and in the amount of $90,594.44 — ultimately to come to a wage loss award of $36,804.00.
Though the defendant cites as authority for the reductionVitti v. Allstate Insurance Co., 245 Conn. 169 (1998), the holding there is that an insurer may offset the limits of liability by the amount of social security disability benefits paid or payable to the insured and that allowing such offset does not conflict with the basic intent of the uninsured motorist statute. Id. at 194-95. That court did not, however, address the issue whether the collateral source doctrine, as embodied in C.G.S. §§ 52-225a and52-225b, permits a tortfeasor or tortfeasor's insurer to reduce a damages award by the amount of social security disability benefits paid. Yet our Supreme Court has esewhere stated, "We do not dispute moreover that the collateral source rule would apply to various other contractual insurance payments, such as life, disability, or medical insurance." Haynes v. Yale-New HavenHospital, 243 Conn. 17,24 (1997). of interest is that, while CGS §§ 52-225a through 52-225c abolished the common law collateral source rule and are therefore in derogation of the common law, CGS § 52-225b(1) specifically exempts from "any other similar insurance benefits" only life insurance benefits. While it is an axiom of statutory construction that legislative intent is determined by analyzing the actual language employed and that one cannot attach meaning to silence, what is certain is that, in enacting this statutory scheme, the legislature did in fact consider whether there should be exceptions to those kinds of CT Page 6360 insurance benefits it intended would constitute collateral sources for which reductions from damage awards were appropriate and, having answered that question in the affirmative, it did not exempt disability insurance payments.
The question then becomes whether there is a sufficient nexus between the disability payments in the instant case and the "health" and "sickness" benefits cited in the statute so as to conclude such disability payments are appropriately included within the penumbra of "other similar insurance benefits." In the absence of other statutory guidance, we may look to the meaning of words as commonly expressed in the law and in dictionaries.State v. Woods, 234 Conn. 301, 309 (1995). The ordinary definition of"disability" includes "the ability to pursue an occupation or perform services for wages because physical ormental impairment (emphasis added)." Webster's Third New International Dictionary. The term "benefit" is defined to include "financial help in time of sickness, old age, orunemployment (emphasis added)." Webster's Third New International Dictionary. When the ordinary meaning of these terms is applied to the statutory language, the disability benefit payments, arising as they do from the recipient's inability to work for reasons of health or sickness, appear clearly to be "other similar insurance benefits."[3] Further, since the jury awarded the claimant $36,804.00 for lost wages and since the claimant has received monthly disability checks in the approximate amount of $1,720.00 for five (5) years after the accident, the failure to make such reduction would have the impermissible result of the plaintiff receiving a duplicate payment for the same element of loss. See e.g., Smith v. Safeco Insurance Co. of America,225 Conn. 566, 573 (1993); Buell v. American Universal Insurance Company,224 Conn. 766, 775 (1993).
Any argument such reduction is prohibited because the only permissible reduction of damages (as opposed to limitations of liability) is as specified in the final paragraph of Page 6 of the applicable policy is unpersuasive. That police provision reads, "Damages payable under this coverage will be reduced by all amounts payable under Automobile Medical Payments, BasicReparations Benefits, Added Basic Reparations Benefits, or any similar auto medical payments coverage (emphasis added). "Basic Reparations Benefits" as that term was previously defined by our statutes provided for payments for economic loss — to include wage loss — arising out of the ownership, maintenance or operation of the insured vehicle. To conclude wage payments made CT Page 6361 to compensate for the same inability to work may not reduce damages either because identified differently or because not made under an auto insurance policy not only strains the bounds of reason but is facially inconsistent with the policy language of Section II, Part V, Uninsured Motorists Insurance, which reads in part, "We will pay those damages which an insured person islegally entitled to recover. . . . (emphasis added)." A reduction for disability insurance payments is consistent with that provision because the plaintiff is not legally entitled to recover twice for lost wages. Reg., Conn. State Agencies § 38a-334-6 (a) specifically incorporates the Connecticut law of damages for uninsured motorist recoveries. The decisional law of this state prohibits duplicate payments. See Buell v. American UniversalIns. Co., 224 Conn. 766, 775 (1993). There is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended that law to be read with them so as to make one consistent body of law. Little v. Ives,158 Conn. 452, 455 (1969). Thus, the presumption is that the legislature, in enacting CGS § 52-225a(a) (the collateral source offset) did not intend to create a separate law of damages for uninsured motorists claims than exists for traditional tort claims.
The plaintiff relies on Arkenbout v. Thomas R. Ryan, et al, 16 Conn. L. Rpt. No. 20, 627 (July 15, 1996) as controlling in the instant situation. In Arkenbout, the court (Hodgson, J.) concluded a deduction for disability insurance payments was not warranted. While the facts in that case differ markedly from those in the case before this court, that court began by noting CGS § 52-225 a(b) and (c) require a post-verdict hearing to receive evidence of the receipt of collateral source benefits for the purpose of determining deductions from the verdict before entering judgment. Relevant to our inquiry, it noted the purpose of abolishing the collateral source rule known as Tort Reform I and II was to prevent double recovery for the same economic loss — "once from collateral sources such as health or disabilityinsurance coverage and again from the tortfeasor (emphasis added)." at 628. The result was to "in effect shift part of the cost of the loss to third parties, such as providers of health and disability insurance benefits (emphasis added)." Id. at 628. The result was ri "in effect shift part of the cost of the loss to third parties, such as providers of health and disabilityinsurance benefits (emphasis added)." Id.Thus, contrary to this plaintiffs position, Arkenbout begins its analysis with the recognition disability insurance payments are a collateral source for which, under appropriate circumstances, a CT Page 6362 reduction of damages may follow. The jury there awarded $430,412.00 for "pecuniary losses for loss of earnings and/or loss of earning capacity." Id. The defendant there argued that amount should be reduced by the amount of monthly disability income benefits received by the claimant. Noting the purpose of the legislation was not to give a tortfeasor a double reduction (once in calculating "loss" and again in deducting collateral source benefits from the verdict), it concluded that, since it was the defendants who sought the deduction, they were required to make a record that the portion of the damage award for which they sought a reduction was in fact awarded by the jury. Id. Unlike the instant case, the Arkenbout jury heard evidence of the claimant's receipt of disability insurance benefits and they were presented with W-2 forms and tax returns and other documents indicating amounts received. The defendants did not submit either a request to change or specific interrogatories with regard to the effect of the disability insurance payments on the calculation of lost income. It followed, therefore, that to permit such reduction in the post-verdict hearing would be to risk a double deduction for the same element of loss. InDiSantis, this court is not faced with the same concern since the parties here agreed not to introduce to the jury any evidence of disability income. While the jury responses to interrogatories indicated they did in fact make a reduction for lost wages, that reduction was not for disability insurance income but because they believed the evidence at trial that the claimant was capable of some form of work for five (5) years following the accident. In other words, the reduction was not for income received while unable to work but for the reason that the jury concluded she could have worked but didn't and that the recoverable loss should reflect that adjustment. Arkenbout raised the spectre of a double reduction for the same disability benefits; in the case before the court, the reduction for such payments can only occur as part of the collateral source hearing.
Whether the collateral source reduction is properly in the full amount of $36,804.00 (the jury award for wage loss) or $11,205.00,[4] the remaining verdict is $0 and a judgment enters in that amount. In view of the defendant having filed an offer of judgment for $1.00 before evidence began the plaintiff is not entitled to costs.
SHEEDY, J.