[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO STRIKE
This action arises from an automobile accident in which the plaintiff, Natalia Garcia, was injured. The single-count complaint, filed on May 28, 1998, alleges that the plaintiff was a passenger in a car being driven by Luz E. Rivera which was struck by an unidentified vehicle. Accordingly, the plaintiff claims that she is entitled to coverage for her injuries under the uninsured/underinsured motorist benefits provision of the driver Rivera's insurance policy with the defendant, ITT Hartford.
The defendant filed an answer and five special defenses on June 5, 1998. The first special defense asserts that the plaintiff is entitled to receive no more than the policy limit of $50,000, "less any applicable credits, set-offs, or deductions." The second special defense alleges that the defendant is entitled to credits for medical payments, reparation benefits coverage or "other similar payments" made to the defendant. The third special defense alleges that the policy contained a consent-to-settle provision, and the plaintiff violated this provision. The fourth special defense alleges that the defendant is entitled to a credit for other uninsured or underinsured coverage available to the plaintiff. The fifth special defense alleges that there is no insurance coverage for the plaintiff because she received $100,000 from or on behalf of the tortfeasor, and this amount is greater than the defendant's policy limit.
On July 21, 1998, the plaintiff filed a motion to strike the third special defense, arguing that a consent-to-settle clause is not properly raised via special defense. The plaintiff also filed a separate motion to strike on July 21, 1998, attacking the other special defenses so far as they dealt with, as plaintiff puts it, "issues of reduction or reimbursement" which, the plaintiff argues, are not proper special defenses. Specifically, the second of the two motions to strike attacks (1) the portion of the first special defense that states "less any applicable credits, set-offs or deductions"; (2) the second and fourth special defenses in their entirety; and (3) paragraphs 1, 2 and 3b of the fifth special defense which allege that there is no coverage for the plaintiff under the Rivera policy because the CT Page 15195 defendant received an amount from the tortfeasor that is greater than the defendant's policy limits. The defendant objected to both motions.[1]
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of a pleading to state a claim upon which relief can be granted. See Practice Book § 10-39, formerly § 152; Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike is the proper method of challenging the legal sufficiency of a special defense." Krasnow v. Christensen, 40 Conn. Sup. 281, 288,492 A.2d 850 (1985); see also Practice Book § 10-39(a)(5), formerly § 152(a)(5).
In ruling on a motion to strike, "all well pleaded facts andthose facts necessarily implied from the allegations are taken as admitted." (Emphasis in original.) Parsons v. United TechnologiesCorp., 243 Conn. 68, 100, 700 A.2d 655 (1997). "In . . . ruling on . . . [a] motion to strike, the trial court . . . has an obligation to take the facts to be those alleged in the special defense and to construe the defenses in a manner most favorable to sustaining their legal sufficiency." Connecticut National Bankv. Douglas, 221 Conn. 530, 536, 606 A.2d 684 (1992).
 I
Consent-to-settle Provision
Whether it is proper for a defendant in an uninsured or underinsured motorist action to raise the violation of a consent-to-settle provision as special defense where the insured has pleaded exhaustion of the tortfeasor's insurance coverage has yet to be addressed by an appellate tribunal of this state. However, the Regulations of Connecticut State Agencies do recognize the general validity of such provisions. See Regs., Conn. State Agencies § 38a-334-6(c)(1).[2] Nonetheless, some Superior Court decisions have held such clauses are invalid in such a situation. See Pinto v. Norfolk Dedham Mutual Fire InsuranceCo., Superior Court, judicial district of Waterbury, Docket No. 111294 (February 23, 1993) (Sylvester, J.) (8 CONN. L. RPTR. 397,8 C.S.C.R. 457); Connor v. State Farm Mutual Automobile InsuranceCo., Superior Court, judicial district of New Haven, Docket No. 327003 (December 9, 1992) (O'Keefe, J.) (8 CONN. L. RPTR. 35). These decisions are grounded on the idea that where the tortfeasor's policy has been exhausted, the insurer has no possible grounds CT Page 15196 to withhold consent.
Other decisions, however, have permitted an insurer to raise the violation of a consent-to-settle provision even if the insured has pleaded exhaustion of the tortfeasor's policy. SeeMelita v. American States Insurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket no. 328791 (April 11, 1997) (Hartmere, J.); Bertz v. Horace Mann Insurance Co., Superior Court, judicial district of Waterbury, Docket No. 115842 (June 19, 1995) (Flynn, J.) (14 CONN. L. RPTR. 523). The Bertz court reasoned that the purpose of the consent-to-settle clause is to protect the insurer's right to subrogation, and that "the reasoning employed by the court in Pinto is based on the overbroad assumption that under Connecticut law, an insurance company has no right of subrogation against a tortfeasor." (Internal quotation marks omitted.) Bertz v. Horace MannInsurance Co., supra, 14 CONN. L. RPTR. 526. At the time Bertz
and Pinto were decided, "the insure[r] [had] a right of subrogation to a personal injury claim reduced to judgment, satisfied or not." Id. Since then, it has been held that an insurer has a broader right to equitable subrogation in a personal injury action, not just in a judgment. See WestchesterFire Insurance Co. v. Allstate Insurance Co., 236 Conn. 362,672 A.2d 939 (1996).
"No insurer providing underinsured motorist coverage . . . shall have any right of subrogation against the owner or operator of the underinsured motor vehicle for underinsured motorist benefits paid or payable by the insurer." Public Acts 1997, No. 97-58, § 4. However, there is no indication that the right to subrogation in the uninsured context has been affected by P.A. 97-58.
The resolution of this issue turns on whether the defendant was arguably prejudiced by the plaintiff's alleged failure to obtain the defendant's consent in settling with the tortfeasor. At least in the context of uninsured motorist coverage, in light of the insurer's right to subrogation, the court finds the reasoning of the Bertz and Melita decisions persuasive. At this stage, the status of the tortfeasor's insurance coverage is at best unclear. If the tortfeasor was uninsured, the defendant could be prejudiced by the plaintiff's failure to obtain its consent before settling with the tortfeasor. For this reason, construing the facts in a manner most favorable to sustaining their legal sufficiency, the motion to strike the third special CT Page 15197 defense is denied.
Reductions Reimbursements
"An insurer should raise issues of monetary policy limits, or credits for payments by or on behalf of third party tortfeasors, by special defense." Practice Book 10-79, formerly § 195B, codifying the holding in Bennett v. AutomobileInsurance Co. of Hartford, 230 Conn. 795, 806, 646 A.2d 806
(1994). "A limitation of liability, whether contractual or statutory, is, in substance and effect, a partial release of liability and, as such, is properly the subject of a special defense." New England Savings Bank v. FTN Properties LimitedPartnership, supra, 32 Conn. App. 146. "Compliance with this procedure will place the trial court and the opposing party on proper notice of the policy limitation issue so that it may be resolved in accordance with [General Statutes] § 38a-336(b)."Bennett v. Automobile Insurance Co. of Hartford, supra, 806. "Policy limitations, like collateral source payments, result in reducing the judgment in a case to an amount lower than the verdict; placing this new rule next to [Sec. 10-78, formerly] Sec. 195A, which forbids the pleading of collateral source payments, should highlight and contrast the differing pleading requirements for practice book users." Practice Book 10-79, formerly § 195B, Official Commentary to the 1996 Amendments. Practice Book § 10-79 represents an exception to the general rule that "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint that demonstrate, nonetheless, that the plaintiff has no cause of action." Grant v. Bassman, 221 Conn. 465, 472-73, 604 A.2d 814
(1992); see also Practice Book § 10-50, formerly § 164.
The meaning of the phrase "issues of policy limits" or "issues of policy limitations" has caused a split among trial courts in the state. Some courts have held that the decision inBennett, now codified in Practice Book § 10-79, mandates that issues such as credits, reductions and set-offs be raised by special defense, as these qualify as policy limitations. See, e.g., Morgan v. Windsor Insurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 317202 (January 20, 1995) (Freedman, J.) (13 CONN. L. RPTR. 415). However, other courts have read Bennett to refer "not to matters of reduction or reimbursement, but rather to specific policy defenses such as, inter alia, the policy holder's lack of cooperation, failure to pay premiums, late notice, or unauthorized use of an insured CT Page 15198 vehicle." Gore v. Allstate Insurance Co., Superior Court, judicial district of Danbury, Docket No. 321050 (May 9, 1996) (Moraghan, J.) (17 CONN. L. RPTR. 124). Accordingly, these courts hold that matters such as credits or setoffs are not policy limitations which are to be pleaded by special defense. Id. Other courts have upheld special defenses based on some of these items but not others, illustrating the confusion that Bennett has caused. See, e.g.,Benoit v. Travelers Insurance Co., Superior Court, judicial district of New London at Norwich, Docket No. 105293 (March 14, 1996) (Hendel, J.) (striking special defenses asserting credits for payments by legally responsible persons or workers' compensation but upholding special defense asserting a set-off for basic reparations benefits paid); Vitti v. Allstate InsuranceCo., Superior Court, judicial district of Danbury, Docket No. 316543 (March 1, 1995) (Leheny, J.) (13 CONN. L. RPTR.) (striking special defense alleging set-off for basic reparations benefits coverage but denying motion to strike special defenses alleging collateral source payments for bodily injury and workers' compensation and other credits due under policy).
The issue turns on how broadly "issues of policy limitations" should be interpreted. Unfortunately, no definition has been provided by an appellate tribunal as of yet. The closest one can get to a definition is the sentence from the Official Commentary to 1996 Amendments that appears after § 195B, now (1998 Rev.) § 10-79, of the 1998 Supplement to the practice book: "Policy limitations . . . result in reducing the judgment in a case to an amount lower than the verdict." Based on the broad language chosen for § 10-79 and the official commentary, the rule should be read to mean that any mechanisms that serve to reduce a judgment in an insurance case to an amount lower than the verdict should be specially pleaded by the insurer. This will place the parties and the court on notice of the policy limitation issue, thus promoting its proper resolution at the appropriate time. SeeBennett v. Automobile Insurance Co. of Hartford, supra,230 Conn. 806.
Many of the cases which have stricken special defenses based on credits and reductions have relied on Practice Book § 10-78, which prohibits raising the receipt of collateral source[3]
payments pursuant to General Stables § 52-225a in a pleading. See, e.g., Amenta v. Nationwide Property CasualtyInsurance, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 521050 (July 27, 1993) (Mullarkey, J.) (9 CONN. L. RPTR. 470). However, "coverage pursuant to a policy for CT Page 15199 uninsured or underinsured motorist coverage is not controlled by the collateral source rule. The singular applicability of the collateral source rule to a claim for uninsured or underinsured motorist coverage is to permit an insurer to reduce the amount of damages sustained by the claimant by the amount of `collateral source payments' received by the claimant . . . That which may or may not qualify as a collateral source under § 52-225a
does not control the determination of which offsets are applicable in the uninsured and underinsured motorist context. (Citation omitted; emphasis in original.) Vitti v. AllstateInsurance Co., 245 Conn. 169, 188 n. 18, 713 A.2d 1269 (1998). "Rather, [Regulation] § 38a-334-6(d) exclusively governs the grounds upon which such uninsured and underinsured insurance may be excluded or limited." (Internal quotation marks omitted.) Id. Section 38a-334-6(d), which lists the means by which uninsured policy limits may be reduced, mentions all of the issues raised in the defendant's special defenses. See Regs., Conn. State Agencies § 38a-334-6(d). In light of the language in Vitti, Practice Book § 10-79 overrides § 10-78 with respect to all issues of policy limitation authorized by § 38a-334-6(d) of the Regulations.
The defendant's fifth special defense alleges that the plaintiff received a payment from or on behalf of the tortfeasor. This special defense qualifies under the plain language of § 10-79 as a credit for a payment made by or on behalf of third party tortfeasors. In addition, the other special defenses to which the plaintiff objects all would, if true, serve to reduce the judgment to an amount lower than the potential verdict. The defendant's first, second and fourth special defenses, therefore, all pertain to "issues of policy limitations." Accordingly, the plaintiff's motion to strike portions of the defendant's first, second, fourth, and fifth special defenses are denied.
The motions to strike the special defenses are, denied in their entirety.
Peck, J.