[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO STRIKE FIRST, THIRD AND FIFTH SPECIAL DEFENSES
The plaintiff, Cirell Gallimore, filed a complaint against the defendant, General Insurance Company of America, Inc., alleging that the defendant is required to reimburse the plaintiff for damages sustained when the plaintiff's motor vehicle was struck by an uninsured motorist. The defendant has filed special defenses and plaintiff moves to strike the first, third and fifth special defenses on the ground that they are inadequate as a matter of law. CT Page 13726
The first special defense alleges that the defendant is entitled to an offset or credit for other payments received by the plaintiff as a result of this accident, including workers' compensation, health insurance, or disability insurance benefits. The third special defense alleges that the defendant is entitled to an offset or credit for any basic medical reparations benefits paid by the defendant as a result of the accident. The fifth special defense alleges that the plaintiff's negligence was a substantial factor in causing the accident.
"[A] plaintiff can [move to strike] a special defense. Nowakv. Nowak, 175 Conn. 112, 116, 394 A.2d 716 (1973); see alsoConnecticut National Bank v. Voog, 233 Conn. 352, 354-551659 A.2d 172 (1995). "In . . . ruling on the . . . motion to strike, the trial court recognizes its obligation to take the facts to be those alleged in the special defenses and to construe the defenses in the manner most favorable to sustaining their legal sufficiency." Connecticut National Bank v. Douglas,221 Conn. 530, 536, 606 A.2d 684 (1992).
 I. The First and Third Special Defenses
The plaintiff contends that the defendant's first and third special defenses are inadequate because they do not address the insurance company's liability to the plaintiff. The defendant argues that the defenses only pertain to the amount of damages the plaintiff is entitled to receive, and therefore are not proper special defenses.
"As a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Practice Book § 164. . . ." (Citation omitted.)Bennett v. Automobile Ins. Co. of Hartford, 230 Conn. 795, 802,646 A.2d 806 (1994). "The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway." Id.
"An insurer should raise issues of monetary policy limits, or credits for payments by or on behalf of third party tortfeasors, by special defense." Practice Book § 10-79; Garcia v. ITTHartford Ins. Company, Superior Court, judicial district of Hartford at Hartford, Docket No. 579974 (December 8, 1998, Peck,CT Page 13727J.) (23 Conn. L. Rptr. 450, 452). "Compliance with this procedure will place the trial court and the opposing party on proper notice of the policy limitation issue so that it may be resolved in accordance with [General Statutes] § 38a-336 (b)." Bennett v.Automobile Ins. Co. of Hartford, supra, 230 Conn. 806
(1994).[1]
The meaning of the phrase "issues of monetary policy limits" or the "policy limitation issue" has caused a split among trial courts of this state. Garcia v. ITT Hartford Ins. Co., supra,23 Conn. L. Rptr. 452. "Some courts have held that the decision in Bennett, now codified in Practice Book § 10-79, mandates that issues such as credits, reductions and set-offs be raised by special defense, as these qualify as policy limitations." Id. "However, other courts have read Bennett to refer not to matters of reduction or reimbursement, but rather to specific policy defenses such as, inter alia, the policy holder's lack of cooperation, failure to pay premiums, late notice, or unauthorized use of an insured vehicle." (Internal quotation marks omitted.) Id. "Other courts have upheld special defenses based on some of these items but not others, illustrating the confusion that Bennett has caused." Id.
Here, the plaintiff argues that the defendant's third special defense, relating to payments from third parties, should not be allowed because payments from collateral sources should not be included in the pleadings.[2] "Many of the cases that have stricken special defenses based on credits and reductions have relied on Practice Book § 10-78, which prohibits raising the receipt of collateral source payments pursuant to General Statutes § 52-225a in pleading."[3] Id. However, § 52-225a
does not pertain to insurance policy limits, because it does not authorize a reduction in uninsured motorist coverage because of the receipt of collateral source payments. See Vitti v. AllstateIns. Co., 245 Conn. 169, 188 n. 18, 713 A.2d 1269 (1998); Smith v.Safeco Ins. Co. of America, 225 Conn. 566, 572, 624 A.2d 892
(1993). "Rather, [Regulation] § 38-334-6 (d) exclusively governs the grounds upon which such [uninsured and underinsured] insurance may be excluded or limited." Vitti v. Allstate Ins.Co., supra, 245 Conn. 188 n. 18. Regs., Conn. State Agencies §38a-334-6 (d).
Section 38a-334-6 (d) provides in pertinent part that "thepolicy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any personCT Page 13728responsible for the injury. . . . or (3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under thebodily injury liability coverage to the extent of the payment." (Emphasis added.)
Here, the defendant has alleged as a special defense that the defendant's liability should be offset by the amount of basic medical reparations paid to the plaintiff. The defendant has also asserted that its liability should be reduced by the amount of payments received by the plaintiff from other sources, including workers' compensation, health insurance and disability insurance.[4] Section 38a-334-6 (d) specifically authorizes insurance policy provisions that limit the insurer's liability because of basic medical reparations and payments from third parties. See id.; Vitti v. Allstate Ins. Co., supra,245 Conn. 195 (an insurance policy may contain provisions that limit the insurer's liability because of payment from other sources). Accordingly, the collateral source payments are issues of monetary policy limits, and therefore are valid special defenses. See Garcia v. ITT Hartford Insurance Co., supra,23 Conn. L. Rptr. 453 ("Practice Book § 10-79 overrides § 10-78 with respect to all issues of policy limitation authorized by § 38a-334-6 (d) of the Regulations").
The plaintiff could argue that the jury should not be informed of the payments from collateral sources. "Ordinarily, the fact that the plaintiff has received benefits from a third party . . . [is] inadmissible under the collateral source rule."Baystate Moving Systems, Inc. v. Bowman, 24 Conn. App. 531, 534,590 A.2d 462 (1991). "The basis of our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source." (Internal quotation marks omitted.) Id., 533. However, the court in Bennett, which initially promulgated the rule later codified in Practice Book §10-79, found that there is a need to notify the opposing party and the court that the defendant intends to assert that the monetary limits of the policy limit its liability, despite the fact that the defendant may not be able to submit the defenses to the jury. See Bennett v. Automobile Ins. Co. of Hartford, supra,230 Conn. 806. "When a jury determination of the facts raised by CT Page 13729 special defense is not necessary, the special defense will not be submitted to the jury but, rather, will be resolved by the trial court prior to the rendering of judgment." Id. Accordingly, the defendant will not be unduly benefited by the inclusion of these allegations in the pleadings.
 II. The Fifth Special Defense
The plaintiff argues that the fifth special defense, which alleges that the plaintiff's negligence was a substantial factor in causing the accident, should be stricken because a prior ruling by the court decided the issue of liability in favor of the plaintiff. Specifically, the plaintiff points to the case ofPettway v. General Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 339185 (September 21, 1998,Melville, J.) In Pettway, the court granted an interlocutory motion for summary judgment, ruling that the plaintiff in the present case was not negligent in the car accident.[5]
"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Also, the issue must have been fully and fairly litigated in the first action." (Citations omitted; internal quotation marks omitted.)Stratford v. International Assn. of Firefighters, 248 Conn. 108,116-17, ___ A.2d ___ (1999). "Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.) Id., 117.
In the Pettway case, the plaintiff, Antoin Pettway, filed an interlocutory motion for summary judgment on the issue of liability. In support of the motion, the plaintiff submitted an affidavit of Cirell Gallimore, the plaintiff in the present action, wherein the plaintiff averred that he was the driver of the car, had the right of way and could not have avoided the accident. The defendant filed a motion for extension of time, which was granted. The defendant then filed a second motion for extension of time, which was never acted upon by the court. The CT Page 13730 defendant did not file an opposition to the motion for summary judgment.
At oral argument on the motion for summary judgment, the defendant did not oppose the motion because the defendant wanted to depose Pettway prior to deciding on whether or not to oppose the summary judgment. (Transcript, Page 1.) Because the defendant insurance company was obviously not at the scene of the accident, the defendant wanted to gather all the relevant facts prior to litigating the issue of liability.
According to the defendant, the first deposition was not taken because the defendant's attorney at that time suffered health problems and was in the hospital. (Transcript, Page 1.) A subsequent deposition also never took place because Pettway was incarcerated. (Transcript, Page 2.) The defendant filed the second motion for extension of time so that it could take Pettway's deposition while he was in prison. (Transcript, Page 6.) The defendant conceded that it did not have a reason to believe that Pettway's deposition would reveal facts relating to liability for the accident, but argued that it needed additional facts to determine whether to oppose the motion for summary judgment. (Transcript, Page 8-9.)
The plaintiff, in Pettway, argued that the second motion for extension of time should not be granted because Gallimore was the client of the defendant's attorney. (Transcript, Page 6.) In the papers, but not at oral argument, the plaintiff alleged that the defendant's previous attorney represented Gallimore in an unrelated, pending action. (Objection to Motion for Extension of Time.) The court found that the defendant's attorney should have discovered from Gallimore whether there was a reasonable basis to believe that Pettway's deposition would reveal facts relating to liability. (Transcript, Page 9.) The court granted the motion for summary judgment on the basis that there were no contested issues of material fact. (Transcript, Page 10.)
In the prior action, the defendant was never in possession of facts that could have been relevant to the issue of liability. Although the parties did have access to Gallimore's explanation of the cause of the accident, there was no evidence of the passenger's observations. The prior motion for summary judgment was decided based upon the evidence then before the court. The present litigation could reveal additional evidence. Accordingly, there was never a full litigation of the issue of liability, and CT Page 13731 the court will not preclude the parties from litigating that issue in the present action.
For the foregoing reasons, the motion to strike special defenses one, three and five is denied.
Nadeau, J.